**E.D. HAY, Olivia Hahn Hay, Scott D. Hay, ADA Lanelle Hay, and Joyce Ann Hay Bower, Appellants,**

v.

**SHELL OIL COMPANY, Appellee.**

No. 13–97–333–CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 4, 1999.

Rehearing Overruled March 11, 1999.

---

Steven A. Fleckman, Fleckman & McGlynn, Julia Beck Kenner, Austin, amicus curiae.

David B. McCall, Tom C. McCall, Wesley G. Ritchie, Diane W. Sanders, McCall & Ritchie, Austin, for appellants.

Eugene M. Nettles, Porter & Hedges, L.L.P., C. Denise Dillard, Houston, Robert P. Houston, Houston, Marek & Griffin, Victoria, Mitchell E. Ayer, Morris & Campbell, P.C., Houston, Robert L. Page, Conroe, Kevin D. Cullen, Cullen, Carsner, Seerden & Cullen, Victoria, W. Mark Cotham , David A. Furlow, Morris & Campbell, Houston, Thomas J. Barry, Yorktown, for appellees.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION ON MOTION FOR REHEARING

HINOJOSA, Justice.

We issued our original opinion in this case on August 13, 1998. Appellants subsequently filed a motion for rehearing. We deny appellants' motion for rehearing, withdraw our opinion of August 13, 1998, and substitute the following as the opinion of the Court.

This is an appeal of a summary judgment granted in favor of appellee, Shell Oil Company. Appellants, E.D. Hay, Olivia Hahn Hay, Scott D. Hay, Ada Lanelle Hay, and Joyce Ann Hay Bower (collectively the "Hays") sued Shell for damages allegedly caused by the improper inclusion of non-productive acreage in a pooled unit known as the E.D. Hay No. 1 Gas Unit ("Hay Unit"). Shell moved for summary judgment on the grounds of limitations, waiver, estoppel, ratification, and no bad faith in forming the unit. In addition, Shell contended the express language of the lease barred the Hays' claims. Without stating a reason, the trial court granted Shell's motion. By six points of error, the Hays contend the trial court erred in granting Shell's motion for summary judgment. We affirm.

### Background

On June 13, 1974, E.D. and Olivia entered into an oil, gas, and mineral lease with Russell Vaught covering approximately 240 acres out of the Indianola Railroad Survey, A–245, DeWitt County, Texas. The next day, Scott and Ada also entered into a lease with Vaught covering approximately four acres

out of the same survey. Shell succeeded to Vaught's interests under these leases.

The leases allowed Shell to pool the acreage with any other land or leases in the immediate vicinity. Pooling was permissible:

> when in [Shell's] judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate said leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of [Shell], promote the conservation of oil and gas in and under and that may be produced from said premises.

Units pooled for gas could not substantially exceed an area of 640 acres, plus a tolerance of ten percent, or 704 acres.

After Shell began production in August 1976 from the Fort Worth National Bank Gas Unit No. 1, a well to the east of the Hays' land, the Hays demanded that Shell drill a well on their property to offset drainage. The offset well was completed in December 1976. On January 20, 1977, Shell filed a Designation of Pooled Gas Unit for the E.D. Hay No. 1 Gas Well. The pool combined adjoining leases and acreage to form a 704 acre pooled unit. In February 1977, Shell completed the Hay Unit as a commercial producer of gas. The Hays learned of the unit's formation in March 1977, when they reviewed their division orders. On July 14, 1977, Shell filed a "P–15" form, as required by the Texas Railroad Commission, swearing under penalty of perjury that all of the acreage in the Hay Unit was reasonably productive of gas.

Shell sold all of its ownership interest in the leases to HCW Oil Income Fund on November 1, 1984, and the Hays executed new division orders in 1985. Parker & Parsley Petroleum Company ("Parker") subsequently acquired the leases and was the operator at the time this suit commenced. After a series of hearings in 1989, the Railroad Commission approved Parker's request to reduce the Hay Unit from 704 acres to 160 acres. Parker filed a "P–15" form on November 14, 1989, swearing that the 160 acres were reasonably productive of hydrocarbons.

In May 1992, after reviewing and obtaining Railroad Commission records, apparently for the first time since the unit formation in 1977, the Hays learned that the production acreage had been reduced to 160 acres. Shell's 1977 "P–15" form declaring the acreage in the Hay Unit reasonably productive was also in the records which the Hays obtained. Almost immediately, the Hays began to question whether they were wrongly sharing royalties with other lessors who were outside the 160 acre unit. This questioning ultimately led the Hays to believe that the original 704 acre unit, formed by Shell, included non-productive acreage in violation of state law and the leases.

The Hays filed suit against Parker[1] on February 21, 1995. On August 15, 1996, the Hays amended their pleadings to include Shell as a defendant.[2] The Hays' causes of action included breach of contract, breach of marketing obligation, failure to develop, and fraud. The Hays also sought an accounting for the full royalty share they should have received from the beginning and a declaratory judgment that the Hay Unit was improperly formed from its inception and that Shell failed to act as a prudent operator. The Hays further pleaded fraudulent concealment and the discovery rule in an effort to toll the statute of limitations. Shell generally denied the allegations and pleaded the affirmative defenses of limitations, ratification, waiver, estoppel, quasi-estoppel, laches, and no liability after November 1, 1984.

Shell moved for summary judgment on its affirmative defenses. The company contended the Hays could not toll limitations by relying on fraudulent concealment or the discovery rule. Shell argued that because as a matter of law it had no duty to disclose, there could be no fraudulent concealment. Shell also argued that the Hays could not prove

---

1. The original defendants were Parker & Parsley Petroleum Company and Parker & Parsley Development, L.P.

2. Other defendants added by this amended pleading were Albert Alex, Valeria Alex, Rolf R. Lippke, Hagen Lippke, and Lawrence Lippke (the "Royalty Defendants").

the applicability of the discovery rule because their injuries were not inherently undiscoverable or objectively verifiable.

The Hays filed a response to the motion for summary judgment and attempted to raise issues of material fact concerning Shell's affirmative defenses as well as their own claims of fraudulent concealment and the discovery rule. The trial court granted Shell's motion without stating a reason and twenty-eight days later severed the Hays' claims against the other defendants into a separate cause number.[3] On appeal, the Hays contend the trial court erred by granting Shell's motion for summary judgment.

## Standard of Review

The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden to: (1) establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action, or (2) establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true. *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.* Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *Gonzalez v. City of Harlingen,* 814 S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied). When a party moves for summary judgment on several theories, we affirm the summary judgment if any one of the theories advanced is meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625–26 (Tex.1996).

## Limitations and the Discovery Rule

Shell moved for summary judgment on the ground the Hays' causes of action are barred by limitations. Shell contended the discovery rule did not apply to the Hays' claims because the alleged injury was not inherently undiscoverable and could not be objectively verified.

The four-year statute of limitations applies to actions for the recovery of royalty payments. *Koch Oil Co. v. Wilber,* 895 S.W.2d 854, 864 (Tex.App.—Beaumont 1995, writ denied); *Dvorken v. Lone Star Indus. Inc.,* 740 S.W.2d 565, 566 (Tex.App.—Fort Worth 1987, no writ). As a rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996); *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994); *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438, 440 (Tex.1940). However, this rule has not been applied without exception. *S.V.,* 933 S.W.2d at 4. In some instances the discovery rule will toll the limitations period until the plaintiff knows, or in the exercise of reasonable diligence should have known, of the wrongful act and resulting injury. *Id.*

If, as alleged, Shell pooled the Hays' productive property with non-productive land, the act causing the legal injury occurred in 1977 when the 704 acre Hay Unit was formed. Unless the discovery rule applies, the trial court did not err in granting Shell's motion for summary judgment on the ground that limitations barred the Hays' claims.

Shell argues that the discovery rule does not apply in this case because the supreme court has not explicitly adopted the discovery rule for causes of action such as those at issue. In support of this argument, Shell cites our opinion in *Harrison v. Bass Enter. Prod. Co.,* 888 S.W.2d 532, 537 (Tex. App.—Corpus Christi 1994, no writ).

The supreme court recently considered the issue of whether the discovery rule

---

**3.** The claims against Parker have been settled.

applies in a royalty case. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (1998). The discovery rule applies to a category of cases when the injury complained of is inherently undiscoverable and is objectively verifiable. *HECI Exploration Co.,* 982 S.W.2d at 886; *S.V.,* 933 S.W.2d at 5–6; *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455–56 (Tex.1996).

■ An injury is objectively verifiable if the presence of injury and the producing wrongful act cannot be disputed, and the facts upon which liability is asserted are demonstrated by direct, physical evidence. *S.V.,* 933 S.W.2d at 6–7; *Altai,* 918 S.W.2d at 455. *Compare Gaddis v. Smith,* 417 S.W.2d 577, 578 (Tex.1967) (presence of sponge in plaintiff's body and how it got there were undisputable) *with Robinson v. Weaver,* 550 S.W.2d 18, 21–22 (Tex.1977) (negligent diagnosis is subject to proof only by expert hindsight, and therefore discovery rule does not apply). While expert testimony alone, which amounts to a "swearing match between experts over opinions," does not suffice, "recognized expert opinion on a particular subject [could] be so near consensus that, in conjunction with objective evidence," it could provide the verification required. *S.V.,* 933 S.W.2d at 15.

The Hays contend that Shell's "P–15" form, filed in 1977 and subsequently refiled by Parker, is some evidence the injury was inherently undiscoverable. While this contention may be correct, at least until the time that Parker requested the productive acreage be reduced to 160 acres, the Hays' response to Shell's motion for summary judgment does not address the issue of whether the injury is objectively verifiable. Because this issue is not specifically presented in the Hays' response, we cannot look at the Hays' evidence to determine whether the issue would preclude summary judgment. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

■ However, the Hays' failure to raise the issue of objective verifiability does not relieve Shell of its burden to establish that, as a matter of law, the discovery rule does not apply in this case. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). Shell's summary judgment evidence included the unobjected-to affidavit of petroleum consultant, Dorothy Level, who testified that petroleum engineering is not an exact science. Level explained that the professional judgment of petroleum engineers often differs as to "their interpretations of the nature, location, amount of discoverable reserves, and drainage areas." The accuracy of this explanation is aptly demonstrated by the expert affidavits attached to the Hays' response, which express opinions opposite of those held by Level.[4] Level also testified that petroleum engineering is an evolving science as reflected by the increased science and technology in the years since the Hay Unit was formed in 1977 and by increased information garnered from the drilling of additional wells, the analysis of subsequent testing and decline curves, the results of reworking operations, and production records. Given the increased technology, the chances for a successful wildcat well have been increased from "one in ten" wells to "one in six," clearly a statistic reflecting the uncertainty of petroleum exploration.

Level opined that the nonproductivity of acreage included in the Hay Unit is not objectively verifiable. The productivity of deep formations, such as the one at issue, could only be verified in 1977 by drilling and completing wells. The uncertainty of drilling oil and gas wells is evidenced by the fact that prior to drilling the well in the Hay Unit, Shell believed from seismic data available that the Edwards formation was on a different side of a fault and 200 feet higher than it actually was. In addition, Shell spent $1.2 million dollars in 1980 in an unsuccessful attempt to drill a well in a gas unit immediately to the south of the Hay Unit. Using hindsight offered by recent maps and seismic data, Level opined that the acreage in the Hay Unit could still reasonably be considered productive. No additional wells have been completed in the Hay Unit to disprove the productivity of the acreage.

**4.** Exactly the "swearing match" the supreme court determined was not objectively verifiable evidence of an injury. *See S.V.,* 933 S.W.2d at 15.

Because this unchallenged testimony establishes the type of injury the Hays complain of is not objectively verifiable by any existing physical evidence, we hold the trial court did not err in granting Shell's motion for summary judgment on the ground the discovery rule did not apply to the Hays' causes of action. Appellants' third and fourth points of error are overruled.

### Fraudulent Concealment

As we previously stated, the Hays' injury would have accrued at the time the unit was formed to include allegedly nonproductive leases. The Hays contend their claims are not barred by limitations, however, because Shell fraudulently concealed facts giving rise to their causes of action. The Hays maintain that Shell actively sought to cover-up the improper pooling by filing a false "P–15" form with the Railroad Commission in 1977. In addition, the Hays assert Shell had a duty to disclose information peculiarly within Shell's knowledge or that there was a duty to pool in good faith.[5]

Fraudulent concealment is an equitable doctrine that provides an affirmative defense to the plea of limitations. *Santanna Natural Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex.App.—Austin, 1997, writ denied); *see American Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex.1994); *Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 584 (Tex.App.—Dallas 1991, writ denied). Under the doctrine of fraudulent concealment, the accrual of the plaintiff's cause of action is deferred because a defendant cannot be permitted to avoid liability for its actions by deceitfully concealing wrongdoing until the statute of limitations has run. *See S.V.*, 933 S.W.2d at 6. On summary judgment, the non-movant has the burden to come forward with proof raising an issue of fact on fraudulent concealment. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex.1996); *American Petrofina, Inc.*, 887 S.W.2d at 830.

To defeat summary judgment based on fraudulent concealment, the non-movant must establish: (1) an underlying tort, (2) the movant's knowledge of the tort, (3) the movant's use of deception to conceal the tort, and (4) the non-movant's reasonable reliance on the tort. *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex.App.—Fort Worth 1997, pet. denied); *DiGrazia v. Old*, 900 S.W.2d 499, 502 (Tex.App.—Texarkana 1995, no writ); *Arabian Shield*, 808 S.W.2d at 585. The gist of the fraudulent concealment defense is the defendant's active suppression of the truth or its failure to disclose the truth when it is under a duty to speak. *Mitchell Energy Corp.*, 958 S.W.2d at 439; *Leonard v. Eskew*, 731 S.W.2d 124, 128 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

Regardless of whether the Hays attempted to defeat summary judgment by showing Shell's active suppression of the truth or by its breached duty to disclose, we conclude the evidence does not raise a material issue of fact regarding Shell's actual knowledge that non-productive leases were pooled. At best, the evidence attached to the Hays' response expresses expert opinions concerning what Shell might have or should have known in 1977 and not what Shell actually knew.

One cannot fraudulently conceal facts of which one has no actual knowledge. *DiGrazia*, 900 S.W.2d at 503; *Baskin v. Mortgage & Trust, Inc.*, 837 S.W.2d 743, 746 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Nichols v. Smith*, 489 S.W.2d 719, 723 (Tex.Civ.App.—Fort Worth 1973), *aff'd*, 507 S.W.2d 518 (1974). Even viewing the record in favor of the Hays, we find the evidence in this case does little more than demonstrate the speculative nature of petroleum exploration. Accordingly, we overrule appellants' fifth point of error.

Because the Hays did not raise a fact issue concerning the tolling of limitations, we hold the trial court did not err in granting Shell's motion for summary judgment on the ground that, as a matter of law, limitations barred the Hays' causes of action against Shell. The second point of error is overruled.

By their sixth point of error, the Hays contend the trial court erred in grant-

---

5. On appeal, the Hays contend the pooling clause made Shell its agent. We do not address this contention because it was not raised before the trial court.

ing summary judgment in favor of the Royalty Defendants because they did not move for summary judgment.

■ The trial court's order granting Shell's motion for summary judgment contains a "mother hubbard" clause which appears to dispose of all parties and claims, including the Royalty Defendants who did not join Shell in the motion for summary judgment. While it is true a trial court errs if it grants a summary judgment in favor of a defendant who does not seek such relief and the judgment as to that defendant must be reversed and remanded, *see Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex.1993), we conclude that rule does not apply to the facts of this case.

Twenty-eight days after the trial court signed the order granting Shell's motion for summary judgment, the court signed a second order severing the Hays' claims against Shell and assigning a new cause number to those claims. The Hays' claims against the Royalty Defendants remained in the original case. Because the trial court continued to have plenary power at the time the severance order was signed, we conclude the trial court's actions were proper and had the same effect as if this Court were to reverse the summary judgment as to the Royalty Defendants and remand all claims against them to the trial court for further proceedings. Appellants' sixth point of error is overruled.

Because the trial court did not err in granting Shell's motion for summary judgment, we overrule appellants' first point of error.

We affirm the trial court's order granting Shell's motion for summary judgment.