NUMBER 13-01-049-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI


 THE BANKRUPTCY ESTATE OF WILLIAM B. HARRISON , Appellant,
v.


JAMES P. BELL, JR., FREDDIE GONZALEZ, GREIG W. COATES, TOMMY JACKS, AND 

MITHOFF & JACKS, L.L.P. , Appellees.




On appeal from the 28th District Court

of Nueces County, Texas.




O P I N I O N

Before Justices Dorsey, Yañez, and Rodriguez

Opinion by Justice Dorsey


This is a business dispute based on allegations made by William B. Harrison, who contends that two of his former
employees conspired together and secretly referred one of his personal injury clients to another law firm. The Bankruptcy
Estate of William B. Harrison, Appellant, ("Harrison"), appeals the trial court's grant of summary judgment against it on all
claims asserted against the defendants, James Bell, Freddie Gonzalez, Greig W. Coates, Tommy Jacks, and Mithoff &
Jacks, L.L.P. The trial court granted judgment against Harrison without stating the grounds upon which the summary
judgment was granted. We reverse, in part, affirm, in part.

When a summary judgment motion is granted on unspecified grounds, this Court will affirm the judgment upon any theory
presented in the motion that establishes a right to judgment as a matter of law. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.
1989). A party moving for summary judgment must establish its right to summary judgment on the issues expressly
presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of
law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). That is, the movant must
show there is no genuine issue of material fact, and that the movant is entitled to summary judgment as a matter of law. 
Nixon, 690 S.W.2d at 548. In deciding whether there is a disputed issue of material fact, evidence favorable to the
nonmovant must be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and all doubts
must be resolved in his or her favor. Id. On appeal, the movant still bears the burden of showing that there is no genuine
issue of material fact and that the movant is entitled to judgment as a matter of law. Havlen v. McDougall, 22 S.W.3d 343,
345 (Tex. 2000).

Taken as told by the plaintiff, the facts are as follows. William B. Harrison was an attorney practicing in the Corpus Christi
area with a busy practice representing injured parties. In April of 1994, he signed a contingency fee contract with a new
client, Melissa Sanchez, whose son was born with serious birth defects. Initial meetings regarding the Sanchez case were
conducted by Harrison himself, his employee, Freddie Gonzalez, and his future employee, James "Buddy" Bell.
Bell--Harrison's future employee--suggested to Harrison that he consult with a good friend of his, Greig Coates, who is
both a practicing lawyer and a medical doctor, regarding the Sanchez case. Greig Coates is an associate at the law firm of
Mithoff & Jacks, L.L.P., in Houston.

In fact, Harrison did meet with Coates and, later, formally requested that Coates conduct an evaluation of the case. That
meeting took place in August, approximately four months after Harrison signed the contingency fee contract with Sanchez. 
While Coates never formally responded to Harrison's request for an evaluation, Bell and Gonzalez--Harrison's
employees--informed Harrison that Coates advised against proceeding with the Sanchez representation. However, Harrison
disagreed with their assessment and instructed Gonzalez and another employee of his, Lisa Gonzalez, to continue working
up the file.

What Harrison did not know was that Bell, who officially became his employee in August of 1994, had, in fact, referred the
case to Greig Coates in September of 1994. After Harrison finally learned what happened, he located in his file a copy of a
letter allegedly sent by him to Melissa Sanchez in July of 1994 terminating their contract for legal representation and
returning her file to her. Harrison contends that the signature on the letter purporting to be his is a forgery. He insists he
did not sign this letter, did not authorize it, and did not know that it existed until well after it was sent. Moreover, Harrison
also discovered in his files a memorandum indicating that the Sanchez file had been closed October 5, 1994. Harrison had
no idea that the memo existed or that the file in his office had been closed. Because he kept track of his files through a
computer tickler system, when the file was closed and taken off the system, he lost track of the Sanchez case. He last
remembers discussing the Sanchez matter with his employees in October of 1994, and at that time, he was under the
impression that Sanchez was his client.

The law firm of Mithoff & Jacks, L.L.P. filed suit on behalf of Sanchez in December of 1994. In February of 1996, the
case settled for approximately $3.5 million. A hefty referral fee was paid to James Bell, Harrison's now-former employee.
Harrison, obviously, received nothing.

Harrison, now the Bankruptcy Estate of William B. Harrison, filed suit against Bell, Gonzalez, Coates, Tommy Jacks and
Mithoff & Jacks, L.L.P., alleging causes of action for fraud, breach of fiduciary duty, unjust enrichment, interference with
contract, conspiracy and negligence. All defendants moved for summary judgment, which the trial court granted on
December 15, 2000. Since all defendants moved for judgment on grounds of limitations, and since the limitations question
can be dispositive, we first address it.

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively
establish that defense. Velsicol Chemical Corp. v. Winograd, 956 S.W.2d 529, 530 (Tex. 1997). When the plaintiff pleads
the discovery rule as an exception to limitations, the defendant must negate that exception as well. Id.; Woods v. William
M. Mercer, Inc., 769 S.W.2d 515, 518 n.2 (Tex. 1988).

All of Harrison's causes of action are governed by either a two-year or a four-year statute of limitations. See Tex. Civ. Prac.
& Rem. Code Ann. § 16.003(a) (Vernon Supp. 2001); First Nat'l Bank of Eagle Pass v. Levine, 721 S.W.2d 287, 289 (Tex.
1986) (tortious interference with contractual relations--two years); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4)
(Vernon Supp. 2001) (fraud--four years); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon Supp. 2001) (breach
of fiduciary duty--four years); HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885 (Tex. 1998) (unjust enrichment--two
years); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2001) (negligence--two years); Tex. Civ. Prac. &
Rem. Code Ann. § 16.003(a) (Vernon Supp. 2001); In re Estate of Herring, 970 S.W.2d 583, 586 (Tex. App.--Corpus
Christi 1998, no pet.) (civil conspiracy--two years). (1) Because the earliest Harrison claims to have filed suit is in
December of 1998, (2) and the events giving rise to his causes of action occurred in the summer of 1994, a straight
application of the statute of limitations would bar all of his claims. However, Harrison has responded to the appellees'
statute of limitations arguments by asserting the discovery rule and the doctrine of fraudulent concealment. We address
each in turn.

First, we hold the discovery rule does not apply to Harrison's injuries. The discovery rule is "a very limited exception to
statutes of limitations," available only when the nature of the plaintiff's injury is both inherently undiscoverable and
objectively verifiable. Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996)). When the discovery
rule applies, it operates to delay accrual of the cause of action, and thus commencement of the running of the statute of
limitations, until a time when the plaintiff knows, or by exercising reasonable diligence, should have known of the facts
giving rise to the claim. Wagner & Brown, Ltd. v. Horwood, 44 Tex. Sup. Ct. J. 1090, 2001 WL 987344, at *2 (Aug. 30,
2001). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed
limitations period despite due diligence." Id. (citing S.V. v. R.V., 933 S.W.2d 1, 7 (Tex. 1996). The question of whether an
injury is "inherently undiscoverable" is not whether the particular plaintiff was able to discover the injury at issue in the
particular case within the statutory period, but rather is, whether the injury is the type of injury that by its very nature falls
into the category of being inherently undiscoverable. Id.

We hold that Harrison's injury is the type of injury that is not inherently undiscoverable. Rather, it is the type of injury that
is discoverable by a plaintiff who exercises reasonable diligence. The precise injury at issue here is the loss of a personal
injury client. While it is possible that a reasonably diligent attorney would not know of the injury at the precise moment a
client of his is secretly released as a client and referred to another attorney by one of his own employees, we cannot say that
a reasonably diligent attorney would continue to remain unaware of the loss of his client for a period of two years--much
less four years--after the loss. Within that period, Harrison had numerous duties to his client that he could not have
fulfilled if he "lost track" of the client. We cannot say that the loss of the client is the type of injury that is inherently
undiscoverable to a reasonably diligent attorney. Thus, because Harrison's injury was not the type of injury that was
inherently undiscoverable within the limitations period, we hold that the discovery rule does not apply.

We now turn to the question of whether the doctrine of fraudulent concealment applies. "[T]he discovery rule exception
and tolling based on fraudulent concealment are distinct concepts that exist for different reasons." Id. at *4. Fraudulent
concealment is an equitable doctrine which estops the defendant from relying on the statute of limitations as an affirmative
defense to the plaintiff's claim by tolling the statute of limitations until the fraud is discovered or could have been
discovered with reasonable diligence. Id. "[A]ccrual [of the plaintiff's cause of action] is deferred because a person cannot
be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." S.V., 933
S.W.2d at 6.

While the discovery rule and the doctrine of fraudulent concealment have much the same effect, the reasons justifying each
is different. Horwood, 2001 WL 987344, at *4. Whereas the discovery rule is intended to mitigate against the harshness of
imposing a strict statute of limitations upon an injured party who could not have known of his injury within the statutory
period because of the inherent nature of the injury, fraudulent concealment prevents a defendant from using the statute of
limitations to shield him against liability when his own actions caused the plaintiff to fail to discover his injury. Id. In
explaining how the two differ in application, the Texas Supreme Court has explained that while the fact that a particular
defendant misrepresented information to a particular plaintiff is not relevant to the categorical determination of inherent
discoverability involved in the discovery rule analysis, it maybe relevant to the equitable principles involved in a
fraudulent concealment analysis. Id. Under fraudulent concealment, the plaintiff must show that the defendant knew of the
wrong, intended to conceal the wrong and did conceal the wrong. See Shah v. Moss, 45 Tex. Sup. Ct. J. 247, 2001 Tex.
LEXIS 131, at *9-*10 (Dec. 20, 2001). When fraudulent concealment applies, it tolls limitations until the plaintiff
discovers the fraud or could have discovered the fraud with reasonable diligence. Id.

Harrison presented his affidavit with his response which asserted that fraudulent concealment tolled the statute of
limitations on his causes of action. In his affidavit, Harrison states that his office file contains a letter dated July 27, 1994,
from himself to Sanchez terminating his representation of her on her medical malpractice case. Harrison avers that the
signature purporting to be his own on the letter is not authentic because he did not sign the letter and did not authorize any
such letter. He never referred the case to another lawyer nor authorized anyone in his office to refer the case to another
lawyer.

Harrison states that Sanchez came into his law office in April of 1994 and executed a contingency fee contract with him
authorizing him to represent her in her medical malpractice case. Harrison states that the file containing this contract
"disappeared from his office." He says that the fact that this contract existed is corroborated by the fact that his office
records indicate that he advanced $1,849.22 on the matter, and he would not have expended such an amount if he had not
obtained a signed contract with Sanchez.

Harrison also states that his office files contained a "closing memo" on the Sanchez matter dated October 1994, in the
handwriting of Lisa Gonzalez. Lisa Gonzalez is the sister of defendant Freddie Gonzalez, who also worked for Harrison at
the time Harrison contends the Sanchez file was stolen from him. Harrison states that he had meetings about and advanced
funds on the Sanchez case from April of 1994 through October of 1994.

Harrison states that in May of 1994, he met with defendant Greig Coates at the recommendation of defendant Bell. Bell
was in negotiations to go to work for Harrison at the time, and Bell recommended that Harrison allow Coates to do an
evaluation of the Sanchez case. Bell officially became Harrison's employee in August.

Harrison states that he did, in fact, request Coates to do an evaluation of the Sanchez case. While he never spoke with
Coates again personally, he discussed Coates' evaluation with Bell and Gonzalez. Harrison states that, at that time, Bell
and Gonzalez tried to convince him that the case had little merit and was not a good investment. Harrison contends,
though, that he disagreed with their assessment of the case and refused to terminate his representation of Sanchez. Harrison
last remembers internal office discussions regarding the Sanchez case in October of 1994.

Harrison maintains that he knew nothing about the case's referral from his office and removal from his internal docket until
sometime in December 1996 or January 1997, when he heard that the case had been settled. Upon hearing this, Harrison
states that he contacted Greig Coates to find out how Coates had obtained Sanchez as a client. At that point, Harrison says,
he realized that Bell must have secretly referred the case to Coates. Harrison also states that he did not know of Freddie
Gonzalez's involvement in the matter until he was told about it in August of 1998.

We hold that this evidence is sufficient to raise a fact issue on the question of whether Buddy Bell and Freddie Gonzalez
fraudulently concealed the referral of the case and manipulation of Harrison's internal docket to remove the case. 
Harrison's affidavit provides circumstantial evidence that Bell and Gonzalez conspired to take the Sanchez case of
Harrison's docket while representing to Harrison that the case was still on the docket. This meets the elements of
fraudulent concealment, that the defendant knew of the wrong, intended to conceal the wrong and did conceal the wrong. 
See Shah, 2001 Tex. LEXIS 131, at *9-*10; see also Hay v. Shell Oil Company, 986 S.W.2d 772, 778 (Tex. App.--Corpus
Christi 1999, pet. denied) (reciting the elements for fraudulent concealment).

Fraudulent concealment estops a culpable party from asserting limitations during a certain period of time--i.e., the period of
time in which the tort was concealed. The statute of limitations is tolled until the fraud is discovered or could have been
discovered with reasonable diligence. See, e.g., Velsicol, 956 S.W.2d at 531. The question of when the fraud was
discovered or when a reasonable person would have discovered it becomes a fact issue. Until that date is determined, we
cannot determine whether the statute of limitations ran out on any of Harrison's causes of action. We cannot determine at
this time, to a certainty, what that date is under the circumstances of this case. Accordingly, Harrison's causes of action
against Bell and Gonzalez survive summary judgment on limitations grounds. (3)

We now turn to the question of whether this evidence is sufficient to invoke the doctrine of fraudulent concealment against
Greig Coates, Tommy Jacks, and Mithoff & Jacks, L.L.P. Here, the evidence fails. Rather, we find Harrison offered no
evidence sufficient to raise a fact issue on the question of whether Coates or the law firm knew of an underlying tort or took
any action to conceal the tort from Harrison. Thus, Harrison failed to survive summary judgment on these defendants'
claims of limitations.

The tortious acts that form the basis of this suit took place between July and September of 1994. In July, a letter
terminating Harrison's contingency contract with Sanchez was mailed from Harrison's law firm. In September, Coates
signed up the Sanchez case as a referral from Bell. The earliest date that Harrison claims to have filed suit was in
December of 1998. Clearly, this is four years past the date the alleged tortious acts occurred. Because none of the
doctrines which would operate to toll the statute of limitations applies in Harrison's causes of action against Coates, Jacks,
and the law firm, we hold summary judgment was properly granted in their favor on limitations grounds. We affirm the
trial court's judgment insofar as it holds that plaintiff take nothing on his claims against Coates, Jacks and Mithoff & Jacks,
LLP.

Remaining Grounds Contained in the Motions


Even though we have held that the trial court erred in granting summary judgment in favor of Bell and Gonzalez on
limitations grounds, the trial court could have granted judgment on other grounds contained in Bell's and Gonzalez's
motions. We now address whether summary judgment was properly granted on grounds other than limitations.

Both Bell and Gonzalez filed supplemental motions seeking judgment on Harrison's causes of action for fraud,
misrepresentation and fraudulent concealment on grounds that the evidence conclusively negates an element of those
causes of action. Specifically, Bell and Gonzalez contend that the evidence conclusively negates the element of reliance,
which is common to all three causes of action. We disagree.

Fraud is established if the defendant makes a material representation, that is false, either known to be false when made or is
asserted without knowledge of its truth, that is intended to be and is relied upon, and that causes injury. American Tobacco
Co., Inc. v. Grinnell, 951 S.W.2d 420, 436 (Tex. 1997). Silence can amount to a false representation when a person who
has a duty to speak remains silent and the person to whom the duty is owed relies upon the silence to his detriment. Id. All
three causes of action require that the plaintiff actually rely to his detriment on the false representations made by the
defendant. Id.

Gonzalez and Bell contend that the false representations at issue were their representations to Harrison that the Sanchez
case had little merit and was not a good investment for his law firm. Because Harrison did not take their advice and drop
the case, they contend, he did not rely on any misrepresentations. Thus, all Harrison's causes of action requiring reliance
must fail.

We disagree with their analysis. Rather, the misrepresentations at issue are the defendants' representations--both
affirmative and through silence--that the case was still on Harrison's internal docket. Harrison does not contend in this suit
that he was injured because he refused to take on Sanchez as a client because of false representations made by Bell and
Gonzalez. Rather, he contends that Bell and Gonzalez secretly referred the case to another lawyer, terminated Harrison's
attorney-client relationship with Sanchez, and deleted the file from Harrison's internal case-tracking system. Those actions
caused Harrison to believe that the case was still on his docket. He relied on those misrepresentations to his detriment
because if they had not made them, Harrison would have known that he had lost the Sanchez file and had the opportunity to
take appropriate remedial action. Bell's and Gonzalez's actions caused Harrison to lose a business opportunity.

We hold the trial court could not have correctly granted summary judgment in favor of Bell and Gonzalez on Harrison's
reliance-based causes of action because Bell and Gonzalez failed to negate the element of reliance as a matter of law. See
Tex. R. Civ. P. 166a(c). Accordingly, we reverse and remand the summary judgment as it pertains to Bell and Gonzalez,
but affirm it as it pertains to Greig Coates, Tommy Jacks and Mithoff & Jacks, L.L.P.



 ______________________________

J. BONNER DORSEY,

Justice



Publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 7th day of February, 2002.

 

1. The parties dispute whether Harrison's breach of fiduciary duty claim should be governed by a four-year or a two-year
statute of limitations. We assume, without deciding, that it is governed by a four-year statute of limitations.

2. The parties dispute whether the first proceeding filed by Harrison was effective for statute of limitations purposes. We
use the earliest date Harrison claims to have filed suit for purposes of analysis, without deciding the merits of that issue.

3. The defendants have attempted to fix a date certain when, as a matter of law, the tort must have been discovered by
exercising reasonable diligence. However, we do not believe that, under these facts, that date can be fixed as a matter of
law. We would be inclined to hold that the absolute latest date an attorney might claim that he was unaware that he no
longer represented a particular client, despite the attorney's diligence, would be the date on which the attorney would have
been required to file suit on behalf of that client. It appears, though, that the Sanchez lawsuit sought damages for injuries to
Sanchez's minor son rather than to Sanchez herself. In that case, Harrison would have had until the child's fourteenth
birthday to file suit--or the year 2007. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp. 2001). Without
using the date that Harrison would have been required to file the Sanchez suit, we do not see how a date certain can be
fixed as a matter of law.