NUMBER
13-04-261-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

CRESTON H. FUNK, JR., AND ANNIE 

MAE CARRINGTON,                                                                       Appellants,

                                                             v.

DEVON LOUISIANA CORP.,                                                     
Appellee.

 

 

                     On appeal from the 24th District
Court

                                         of
Goliad County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justice Hinojosa and Rodriguez

 

      Opinion by Chief
Justice Valdez

 








Appellants, Creston H. Funk, Jr., and Annie Mae Funk
Carrington (Athe Funks@), appeal from a final take-nothing judgment
rendered in favor of appellee, Devon Louisiana Corporation.  In a related case, original appellants,
Mercedes B. Whittington, et al., reached a settlement with Devon, and we
accordingly granted an agreed motion to dismiss the appeals of the Whittingtons
and corresponding parties.  All issues
between the Whittingtons as appellants and Devon as appellee were dismissed.[1]   

Here, the Funks argue that summary judgment should
not have been granted against them.  We
also address two cross-points raised by Devon and the Whittingtons as
cross-appellees.  We affirm the judgment
of the trial court.

I. 
Standard of Review 

We review the trial court's granting of a motion for
summary judgment de novo. Natividad v. Alexsis, Inc., 875 S.W.2d
695, 699 (Tex. 1994); Tex. Commerce Bank Rio Grande Valley v. Correa, 28
S.W.3d 723, 726 (Tex. App.BCorpus Christi 2000, pet. denied).  Appellee was required to establish that no
genuine issue of material fact existed and that judgment should be granted as a
matter of law.  See Tex. R. Civ. P. 166a(c); Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  Where the only question presented to the
trial court was a question of law and both sides moved for summary judgment,
the appellate court should render the judgment that the trial court should have
rendered.  See Coastal Liquids
Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d  880, 883 (Tex. 2001); Jones v. Strauss, 745
S.W.2d 898, 900 (Tex. 1988); Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.,
33 S.W.3d 102, 104 (Tex. App.BCorpus Christi 2000, pet. denied); The Cadle Co.
v. Butler, 951 S.W.2d 901, 905 (Tex. App.BCorpus
Christi 1997, no writ).[2]  








II. Background

In March 1977, the Funks entered into an oil, gas,
and mineral lease with Kenneth English. 
English assigned the Funk lease to Texas Eastern Exploration
Company.  The lease contained a pooling
provision granting the lessee the option to pool or combine the acreage with
other land, lease, or leases in the immediate vicinity.  In July 1983, Texas Eastern applied for a
permit to drill on the Funk land and began drilling on August 14, 1983.  On August 23, 1983, Texas Eastern entered
into a mineral lease with the Whittingtons covering 673.8 acres of property
adjacent to the Funk land.  The Funk
pooled unit (AFunk Unit@) was formed December 16, 1983, and consisted of
179.49 acres of the Funks= land and about 149 acres out of the Whittington
tract.  The Declaration of Unit was
recorded in December 1984.








The Funks= underlying dispute arose in 1983 as the result of
pooling pursuant to their oil and gas lease. 
They contend that the formation of the Funk Unit was done in bad faith
and resulted in an improperly reduced share of royalties. Texas Eastern, the
operator who originally pooled the unit in 1983, had ceased to be a viable
legal entity and had transferred its interest to Samedan Oil Company in 1987,
who in turn transferred the unit to New West Fuels, L.C. in 1993, who in turn
transferred the unit to Weber Energy Corporation in 1994.  In August 1996, Weber transferred its
interest to Tesoro E & P Company, L.P. 
The following year the Funks signed a second ratification confirming
their lease; an earlier ratification had been signed in 1993.  The operational interests were again
transferred, this time from Tesoro to EEX E & P, L.P. in January 2000, then
to Cliffwood Oil & Gas Corporation in October 2000, later to Ocean Energy,
Inc. in March 2001, and subsequently acquired by Devon.  The Funks filed their lawsuit in Goliad
County against Texas Eastern and the above successor lessees.[3]  The lawsuit was not filed until November 13,
2000.

All parties, including the Funks, moved for summary judgment
on multiple bases. 

 The Funks
claimed the pooled unit was either improperly formed in December 1983 or that
it terminated in January 1996, despite their signed ratification agreements
from both 1993 and 1997.  The Funks also
claimed, inter alia, Tesoro fraudulently induced them to sign the 1997
ratification. Eventually, the trial court granted the defendants= motions for summary judgment and denied the Funks= partial motion for summary judgment.  The trial court carved out the Funks= claims against Tesoro for oil royalties from
November 13, 1996 through April 1997. 
These latter claims against Tesoro were settled and dismissed on the same
day the final judgment was entered.  The
Funks= appeal against Devon is the remaining claim for our
consideration.

III. The Funks= Contentions

The Funks argue in their first issue that the court
erred by granting summary judgment against them because there were material
fact questions regarding the validity and existence of the Funk Unit.  They also contend the trial court erred
because the appellees did not meet their burden on conclusively proving all
elements of their affirmative defense of limitations.  Finally, the Funks argue there are material
fact issues of fraud (inducement or concealment) concerning the ratification of
the Funk Unit. 

     
IV. Analysis

We first address the Funks= second issue on appeal regarding the affirmative
defense of limitations, as we find it to be dispositive.  








Sixteen years and eleven months after the Funk Unit
was formed, the Funks claimed for the first time the unit was formed in bad
faith resulting in a reduced share of royalties.  They also raised many other arguments,
including non-compliance with the pooling clauses, the termination of the
Whittington lease, mandatory pooling language in the Whittington lease, lapse,
estoppel, laches, and waiver.   However,
it is readily apparent that all contract and royalty claims accruing before
November 13, 1996, absent an exception, are time barred.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 16.051
(Vernon 1997).  The Funks argue that
summary judgment should not have been granted based upon the relevant four year
statute of limitations because the discovery rule applies.  Specifically, the Funks contend that they
prevail on both the Ainherently undiscoverable@ inquiry and the Aobjectively
verifiable@ elements of the discovery rule.  Thus, they argue their claims did not accrue
until November 1998.








The Funks partially acknowledge our holding in Hay
v. Shell Oil Co., 986 S.W.2d 772, 776 (Tex. App.BCorpus Christi 1999, pet. denied), in which we
stated the following:  (1) the four-year
statute of limitations applies to actions for the recovery of royalty payments;
(2) an action accrues when a wrongful act causes some legal injury; (3) in
limited instances, the discovery rule will toll the limitations period; and (4)
the discovery rule applies to a category of cases when the injury complained of
is inherently undiscoverable and is objectively verifiable.  Id. at 776-77.  In Hay, we also observed, as is
relevant here, that when productive property is pooled with non-productive
land, the act causing the legal injury occurred at the time of pooling, not
thereafter.  Id. at 776.  Thus, the Funks= legal
injury occurred in 1983, at the time of the pooling.  The Funks correctly point out that our Hay
decision was based in part upon unchallenged expert testimony; nonetheless, our
ultimate conclusions are relevant and applicable here.

An injury is inherently undiscoverable if it is, by
its nature, unlikely to be discovered within the prescribed limitations period
despite due diligence.   S.V. v. R.V.,
933 S.W.2d 1, 7 (Tex. 1996). 
"Inherently undiscoverable" does not mean that a particular
plaintiff did not discover his or her particular injury within the applicable
limitations period.  Id. Rather,
the determination of whether an injury is inherently undiscoverable is
undertaken on a categorical basis in order to bring  predictability and consistency.   See Apex Towing Co. v. Tolin, 41
S.W.3d 118, 122 (Tex. 2001) (citing  S.V.,
933 S.W.2d at 6);  see also HECI
Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex.1998).  Accordingly, the question here is not whether
the Funks detected the alleged improper pooling and resulting underpayment
within the limitations period.  Rather,
the categorical question is whether theirs is "the type of injury that
generally is discoverable by the exercise of reasonable diligence."   HECI, 982 S.W.2d at 886.

Devon aptly observes that the Funks= own expert cited at length to records of the
Railroad Commission in attempting to establish the allegation of bad faith
pooling.[4]  Further, as Devon pointed out in its summary
judgment motion, the Funks admitted by deposition testimony that they had
documents in their own files and that the Railroad Commission files were
available to assist them with the management of their mineral interests.  Moreover, the Funks knew or should have known
of the pooling of their property, which caused the diminished royalties in
1984, when they received their checks, or at the latest by 1985 when they
signed division orders.   








ARoyalty owners cannot be oblivious to the existence
of other operators in the area or the existence of a common reservoir.@  Id.  We conclude that they also cannot be oblivious
to available public records and other available information indicating the
non-existence of a common reservoir.

Further, we note that multiple courts have held that
the discovery rule does not apply in analogous contexts.  See Wagner & Brown, Ltd. v. Horwood,
58 S.W.3d 732, 734-35 (Tex. 2001) (claims arising from excessive gathering and
compression fees are not inherently undiscoverable); Shivers v. Texaco
Exploration & Prod., Inc., 965 S.W.2d 727, 735 (Tex. App.BTexarkana 1998, writ denied) (failure to apprize
royalty owner of tax laws regarding royalties from tight formation wells was
not inherently undiscoverable); Rogers v. Ricane Enters., Inc., 930
S.W.2d 157, 169 (Tex. App.BAmarillo 1996, writ denied) (discovery rule did not
apply to claims for conversion of oil and gas where wells were openly located
on property and production documents were a matter of public record); Koch
Oil Co. v. Wilber, 895 S.W.2d 854, 863 (Tex. App.BBeaumont 1995, writ denied) (holding that discovery
rule did not apply to claim for failure to pay royalty because available
information should have put plaintiff on inquiry); Harrison v. Bass Enter.
Prod. Co., 888 S.W.2d 532, 538 (Tex. App.BCorpus
Christi 1994, no pet.) (holding that discovery rule did not apply to nonpayment
of royalty).  We overrule this issue.[5]








We now turn to the Funks= argument concerning fraudulent inducement and
fraudulent concealment.  They argue that
they were fraudulently induced to sign a ratification of the Funk Unit.  They argue specifically that Tesoro was aware
of cessation of gas production from the Funk No. 1 Well, which in turn
terminated the Whittington lease and the existence of the Funk Unit.  This tort, 
they contend, would give rise to a claim for exemplary damages in
addition to their breach of contract damages. 
However, appellants fail to make appropriate citations to the record in
support of these claims.  See Tex. R. App. P.  38.1(f) & (h).  Furthermore, these arguments lack foundation
as Tesoro contends the lease did not terminate and the summary judgment proof
includes the  Whittingtons= affidavit swearing that their lease did not terminate.  In addition, appellants settled all claims
with Tesoro regarding the relevant time period, which necessarily includes the
events surrounding the March 16, 1997, ratification of the pooling agreement by
the Funks.  Thus, this claim of
fraudulent inducement is precluded by the settlement. 

 In the same
issue, the Funks contend there was fraudulent concealment.[6]  They argue that Tesoro=s representatives never informed them of the changed
status of the Funk No. 1 Well from a gas well to an oil well and that a map
shown by Tesoro did not reveal a fault line separating the reservoir under the
Whittington acreage from the Funks= property. 








Fraudulent concealment is an equitable doctrine that
provides an affirmative defense to the plea of limitations.  Hay, 986 S.W.2d at 778.  To defeat summary judgment based on
fraudulent concealment, the non‑movant must establish the following:  (1) an underlying tort; (2) the movant's
knowledge of the tort; (3) the movant's use of deception to conceal the tort;
and (4) the non‑movant's reasonable reliance on the tort.  Id.  
The gravamen of the fraudulent concealment defense is the defendant's
active suppression of the truth or its failure to disclose the truth when it is
under a duty to speak.   Id.   While the Funks did address these matters in
their summary judgment response, they failed to present some evidence as to
each element of this affirmative defense to limitations.  For example, they argued to the trial court
that Tesoro=s chief landman testified that he did not know the
well to be an oil well Awhen in fact Tesoro knew the Funk No. 1 well was an
oil well.@  No proof is
offered for the bald assertion.  In any
event, one cannot fraudulently conceal facts of which one has no actual
knowledge.   Id.   Because the Funks did not raise a material
fact issue on fraudulent concealment, we overrule this issue.  

V. Devon=s Cross-Point

By cross-point, Devon argues the trial court erred
by granting special exceptions to its request for declaratory action and
thereby denying its right to declare the Funk Unit valid.  Assuming, arguendo, Devon is correct,
there is no harm because the final judgment granted Devon=s requested relief. 
The April 12, 2004, judgment recites: 
AOrdered, and Declared that the Funk Unit established
by Declaration of Unit dated December 16, 1983, recorded in Volume 262, page
190, Deed Records of Goliad County, Texas, has not terminated and is a valid
and existing unit.@  We therefore
decline to address this argument as unnecessary.  Tex.
R. App. P. 44.1(a)(1).








Devon further complains through a cross-point that
the trial court did not award it attorneys= fees as requested.  
The Declaratory Judgments Act does not require an award of attorneys= fees to the prevailing party.  Rather, it provides that the court
"may" award attorneys= fees.  Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997).  The statute thus affords the trial court a
measure of discretion in deciding whether to award attorneys= fees.  Bocquet
v. Herring, 972 S.W.2d 19, 20 (Tex. 1998) (citing Comm=rs Court v. Agan, 940 S.W.2d 77, 81 (Tex.1997); Barshop v. Medina County Underground
Water Cons. Dist., 925 S.W.2d 618, 637‑38 (Tex.1996); Tex. Educ.
Agency v. Leeper, 893 S.W.2d 432, 444‑46 (Tex.1994); Edgewood
Indep. Sch. Dist. v. Kirby, 777 S.W.2d 391, 398‑99 (Tex.1989); Duncan
v. Pogue, 759 S.W.2d 435, 435‑36 (Tex.1988); Oake v. Collin County,
692 S.W.2d 454, 455‑56 (Tex.1985)). 
Devon fails to demonstrate how the denial of attorneys= fees in this case was an abuse of discretion.  See City of Houston v. Texan Land &
Cattle Co., 138 S.W.3d 382, 392 (Tex. App.BHouston
[14th Dist.] 2004, no pet.); Everest Exploration, Inc. v. URI, Inc., 131
S.W.3d 138, 145 (Tex. App.BSan Antonio 2004, no pet.).[7]  This issue is overruled. 

VI. The Whittingtons= Cross-Point

Finally, there is the matter of the Whittingtons= cross-point. 
In it, they initially argued that they should have been awarded interest
and attorneys= fees.  These
claims were settled and a dismissal was entered as to these matters.  The Whittingtons further argue what they
denominate an Aalternative@ point which we address here.  In this alternative point, they suggest Devon
has an obligation to pay royalties to them even if the Funk Unit is invalid
because their lease is valid in any event. 
Devon argues that this alternative issue presents a hypothetical issue
that we should not entertain.  We agree.








As already noted, the final judgment of the trial
court recites that the Funk Unit is a valid and existing unit.  Further, the judgment provides that all funds
deposited with the registry of the Court, plus interest, are to be paid to the
Whittingtons.  According to the final
judgment, this payment is without prejudice to any party for an accounting,
audit or claim for amounts owed Devon or the Whittingtons under the Whittington
lease.  These matters were dismissed by
the trial court without prejudice, except as otherwise granted by the judgment.  Thus, we see no reason to further entertain
this alternative or hypothetical issue, as it was not fully addressed below.[8]   See
Camarena v. Tex. Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988) (noting
that it is axiomatic that appellate courts do not decide cases in which no
controversy exists between the parties) (citing City of West University
Place v. Martin, 132 Tex. 354, 123 S.W.2d 638 (1939)).

VII. 
Conclusion

The judgment of the trial court is affirmed.

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

 

 

Memorandum Opinion delivered and filed

this 13th day of October, 2005.











[1] 
See Whittington v. Devon Louisiana Corp., Nos.
13-04-261-CV & 13-04-671-CV, 2005 Tex. App. LEXIS 58 (Tex. App.BCorpus Christi January 6,
2005, no pet.) (per curiam).  





[2]While some of the parties also
filed no-evidence motions for summary judgment, the Funks correctly assert that
the rule allowing for no-evidence summary judgment motions does not apply to
affirmative defenses raised by the moving party.  Tex.
R. Civ. P. 166(a)(i); Pustejovshk v. Rapid-American Corp., 35
S.W.3d. 643, 646 (Tex. 2000) (movant for summary judgment on affirmative
defense of limitations must conclusively establish elements of that defense).





[3] 
According to the Funks, Texas Eastern was dismissed due to corporate
dissolution.  Additionally, New West and
Samedan were dismissed pursuant to a settlement.





[4] 
Well logs and structure maps were conceded to be on file with the
Railroad Commission as early as January 1986 and perhaps before.





[5] 
Appellants would have us engraft or imply a further limitations
exception because of the good faith requirement in the lease.  We decline to conclude that this good faith
requirement would create such an exception. 
See Harrison v. Bass Enter. Prod. Co., 888 S.W.2d 532, 537
(Tex. App.BCorpus Christi 1994, no pet.)
(holding that there was no fiduciary or special relationship between an
operator and a lessee that would give rise to a duty on the part of the
operator to disclose the existence of a cause of action the royalty owner had
against it).





[6] 
There is arguably a period before November 13, 1996, to which this
contention may have been applicable as a defense to the statute of limitations.





[7] Devon also failed to offer or
secure a bill of exceptions on the matter of attorneys= fees.





[8] For the same reasons, we deny the
Whittingtons= motion to file the confidential
settlement agreement.