The BANKRUPTCY ESTATE of
William B. HARRISON,
Appellant,

v.

James P. BELL, Jr., Freddie Gonzalez, Greig W. Coates, Tommy Jacks, and Mithoff & Jacks, L.L.P., Appellees.

No. 13–01–049–CV.

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Feb. 7, 2002.

Andrew M. Greenwell, Harris & Greenwell, Caroline L. Bertuzzi, Corpus Christi, for appellant.

Carlos Villarreal, Barger, Hermansen, McKibben & Villarreal, J.A. 'Tony' Canales, Nancy M. Simonson, Canales & Simonson, P.C., Paul G. Kratzig, Law Office of Paul G. Kratzig, Corpus Christi, Patrick L. Hughes, Haynes and Boone, Houston, for appellees.

Before Justices DORSEY, YAÑEZ, and RODRIGUEZ.

## OPINION

J. BONNER DORSEY, Justice.

This is a business dispute based on allegations made by William B. Harrison, who contends that two of his former employees conspired together and secretly referred one of his personal injury clients to another law firm. The Bankruptcy Estate of William B. Harrison, Appellant, ("Harrison"), appeals the trial court's grant of summary judgment against it on all claims asserted against the defendants, James Bell, Freddie Gonzalez, Greig W. Coates, Tommy Jacks, and Mithoff & Jacks, L.L.P. The trial court granted judgment against Harrison without stating the grounds upon which the summary judgment was granted. We reverse, in part, affirm, in part.

When a summary judgment motion is granted on unspecified grounds, this Court will affirm the judgment upon any theory presented in the motion that establishes a right to judgment as a matter of law. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). A party moving for summary judgment must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). That is, the movant must show there is no genuine issue of material fact, and that the movant is entitled to summary judgment

as a matter of law. *Nixon*, 690 S.W.2d at 548. In deciding whether there is a disputed issue of material fact, evidence favorable to the nonmovant must be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and all doubts must be resolved in his or her favor. *Id.* On appeal, the movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex.2000).

Taken as told by the plaintiff, the facts are as follows. William B. Harrison was an attorney practicing in the Corpus Christi area with a busy practice representing injured parties. In April of 1994, he signed a contingency fee contract with a new client, Melissa Sanchez, whose son was born with serious birth defects. Initial meetings regarding the Sanchez case were conducted by Harrison himself, his employee, Freddie Gonzalez, and his future employee, James "Buddy" Bell. Bell— Harrison's future employee—suggested to Harrison that he consult with a good friend of his, Greig Coates, who is both a practicing lawyer and a medical doctor, regarding the Sanchez case. Greig Coates is an associate at the law firm of Mithoff & Jacks, L.L.P., in Houston.

In fact, Harrison did meet with Coates and, later, formally requested that Coates conduct an evaluation of the case. That meeting took place in August, approximately four months after Harrison signed the contingency fee contract with Sanchez. While Coates never formally responded to Harrison's request for an evaluation, Bell and Gonzalez—Harrison's employees—informed Harrison that Coates advised against proceeding with the Sanchez representation. However, Harrison disagreed with their assessment and instructed Gon-

zalez and another employee of his, Lisa Gonzalez, to continue working up the file.

What Harrison did not know was that Bell, who officially became his employee in August of 1994, had, in fact, *referred the case to Greig Coates* in September of 1994. After Harrison finally learned what happened, he located in his file a copy of a letter allegedly sent by him to Melissa Sanchez in July of 1994 terminating their contract for legal representation and returning her file to her. Harrison contends that the signature on the letter purporting to be his is a forgery. He insists he did not sign this letter, did not authorize it, and did not know that it existed until well after it was sent. Moreover, Harrison also discovered in his files a memorandum indicating that the Sanchez file had been closed October 5, 1994. Harrison had no idea that the memo existed or that the file in his office had been closed. Because he kept track of his files through a computer tickler system, when the file was closed and taken off the system, he lost track of the Sanchez case. He last remembers discussing the Sanchez matter with his employees in October of 1994, and at that time, he was under the impression that Sanchez was his client.

The law firm of Mithoff & Jacks, L.L.P. filed suit on behalf of Sanchez in December of 1994. In February of 1996, the case settled for approximately $3.5 million. A hefty referral fee was paid to James Bell, Harrison's now-former employee. Harrison, obviously, received nothing.

Harrison, now the Bankruptcy Estate of William B. Harrison, filed suit against Bell, Gonzalez, Coates, Tommy Jacks and Mithoff & Jacks, L.L.P., alleging causes of action for fraud, breach of fiduciary duty, unjust enrichment, interference with con-

tract, conspiracy and negligence. All defendants moved for summary judgment, which the trial court granted on December 15, 2000. Since all defendants moved for judgment on grounds of limitations, and since the limitations question can be dispositive, we first address it.

██ A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *Velsicol Chemical Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997). When the plaintiff pleads the discovery rule as an exception to limitations, the defendant must negate that exception as well. *Id.; Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 n. 2 (Tex.1988).

All of Harrison's causes of action are governed by either a two-year or a four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp.2001); *First Nat'l Bank of Eagle Pass v. Levine,* 721 S.W.2d 287, 289 (Tex. 1986) (tortious interference with contractual relations—two years); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (Vernon Supp.2001) (fraud—four years); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon Supp.2001) (breach of fiduciary duty—four years); *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 885 (Tex.1998) (unjust enrichment—two years); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp.2001) (negligence—two years); Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp.2001); *In re Estate of Herring,* 970 S.W.2d 583, 586 (Tex. App.—Corpus Christi 1998, no pet.) (civil conspiracy—two years).[1] Because the earliest Harrison claims to have filed suit is in

---

1. The parties dispute whether Harrison's breach of fiduciary duty claim should be governed by a four-year or a two-year statute of limitations. We assume, without deciding, that it is governed by a four-year statute of limitations.

December of 1998,[2] and the events giving rise to his causes of action occurred in the summer of 1994, a straight application of the statute of limitations would bar all of his claims. However, Harrison has responded to the appellees' statute of limitations arguments by asserting the discovery rule and the doctrine of fraudulent concealment. We address each in turn.

First, we hold the discovery rule does not apply to Harrison's injuries. The discovery rule is "a very limited exception to statutes of limitations," available only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex.1996). When the discovery rule applies, it operates to delay accrual of the cause of action, and thus commencement of the running of the statute of limitations, until a time when the plaintiff knows, or by exercising reasonable diligence, should have known of the facts giving rise to the claim. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35, 44 Tex. Sup. Ct. J. 1090 (2001). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex.1996)). The question of whether an injury is "inherently undiscoverable" is not whether the particular plaintiff was able to discover the injury at issue in the particular case within the statutory period, but rather is, whether the injury is the type of injury that by its very nature falls into the category of being inherently undiscoverable. *Id.*

We hold that Harrison's injury is the type of injury that is not inherently undiscoverable. Rather, it is the type of injury that is discoverable by a plaintiff who exercises reasonable diligence. The precise injury at issue here is the loss of a personal injury client. While it is possible that a reasonably diligent attorney would not know of the injury at the precise moment a client of his is secretly released as a client and referred to another attorney by one of his own employees, we cannot say that a reasonably diligent attorney would continue to remain unaware of the loss of his client for a period of two years—much less four years—after the loss. Within that period, Harrison had numerous duties to his client that he could not have fulfilled if he "lost track" of the client. We cannot say that the loss of the client is the type of injury that is inherently undiscoverable to a reasonably diligent attorney. Thus, because Harrison's injury was not the type of injury that was inherently undiscoverable within the limitations period, we hold that the discovery rule does not apply.

We now turn to the question of whether the doctrine of fraudulent concealment applies. "[T]he discovery rule exception and tolling based on fraudulent concealment are distinct concepts that exist for different reasons." *Id.* 58 S.W.3d at 736. Fraudulent concealment is an equitable doctrine which estops the defendant from relying on the statute of limitations as an affirmative defense to the plaintiff's claim by tolling the statute of limitations until the fraud is discovered or could have been discovered with reasonable diligence. *Id.* "[A]ccrual [of the plaintiff's cause of action] is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6.

2. The parties dispute whether the first proceeding filed by Harrison was effective for statute of limitations purposes. We use the earliest date Harrison claims to have filed suit for purposes of analysis, without deciding the merits of that issue.

While the discovery rule and the doctrine of fraudulent concealment have much the same effect, the reasons justifying each is different. *Horwood,* 58 S.W.3d at 736. Whereas the discovery rule is intended to mitigate against the harshness of imposing a strict statute of limitations upon an injured party who could not have known of his injury within the statutory period because of the inherent nature of the injury, fraudulent concealment prevents a defendant from using the statute of limitations to shield him against liability when his own actions caused the plaintiff to fail to discover his injury. *Id.* In explaining how the two differ in application, the Texas Supreme Court has explained that while the fact that a particular defendant misrepresented information to a particular plaintiff *is not* relevant to the categorical determination of inherent discoverability involved in the discovery rule analysis, it *may* be relevant to the equitable principles involved in a fraudulent concealment analysis. *Id.* Under fraudulent concealment, the plaintiff must show that the defendant knew of the wrong, intended to conceal the wrong and did conceal the wrong. *See Shah v. Moss,* 45 Tex. Sup.Ct. J. 247, 67 S.W.3d 836, 841–42, 2001 Tex. LEXIS 131, at *9–*10 (2001). When fraudulent concealment applies, it tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence. *Id.*

Harrison presented his affidavit with his response which asserted that fraudulent concealment tolled the statute of limitations on his causes of action. In his affidavit, Harrison states that his office file contains a letter dated July 27, 1994, from himself to Sanchez terminating his representation of her on her medical malpractice case. Harrison avers that the signature purporting to be his own on the letter is not authentic because he did not sign the letter and did not authorize any such letter. He never referred the case to another lawyer nor authorized anyone in his office to refer the case to another lawyer.

Harrison states that Sanchez came into his law office in April of 1994 and executed a contingency fee contract with him authorizing him to represent her in her medical malpractice case. Harrison states that the file containing this contract "disappeared from his office." He says that the fact that this contract existed is corroborated by the fact that his office records indicate that he advanced $1,849.22 on the matter, and he would not have expended such an amount if he had not obtained a signed contract with Sanchez.

Harrison also states that his office files contained a "closing memo" on the Sanchez matter dated October 1994, in the handwriting of Lisa Gonzalez. Lisa Gonzalez is the sister of defendant Freddie Gonzalez, who also worked for Harrison at the time Harrison contends the Sanchez file was stolen from him. Harrison states that he had meetings about and advanced funds on the Sanchez case from April of 1994 through October of 1994.

Harrison states that in May of 1994, he met with defendant Greig Coates at the recommendation of defendant Bell. Bell was in negotiations to go to work for Harrison at the time, and Bell recommended that Harrison allow Coates to do an evaluation of the Sanchez case. Bell officially became Harrison's employee in August.

Harrison states that he did, in fact, request Coates to do an evaluation of the Sanchez case. While he never spoke with Coates again personally, he discussed Coates' evaluation with Bell and Gonzalez. Harrison states that, at that time, Bell and Gonzalez tried to convince him that the case had little merit and was not a good investment. Harrison contends, though,

that he disagreed with their assessment of the case and refused to terminate his representation of Sanchez. Harrison last remembers internal office discussions regarding the Sanchez case in October of 1994.

Harrison maintains that he knew nothing about the case's referral from his office and removal from his internal docket until sometime in December 1996 or January 1997, when he heard that the case had been settled. Upon hearing this, Harrison states that he contacted Greig Coates to find out how Coates had obtained Sanchez as a client. At that point, Harrison says, he realized that Bell must have secretly referred the case to Coates. Harrison also states that he did not know of Freddie Gonzalez's involvement in the matter until he was told about it in August of 1998.

We hold that this evidence is sufficient to raise a fact issue on the question of whether Buddy Bell and Freddie Gonzalez fraudulently concealed the referral of the case and manipulation of Harrison's internal docket to remove the case. Harrison's affidavit provides circumstantial evidence that Bell and Gonzalez conspired to take the Sanchez case off Harrison's docket while representing to Harrison that the case was still on the docket. This meets the elements of fraudulent concealment, that the defendant knew of the wrong, intended to conceal the wrong and did conceal the wrong. *See Shah,* 67 S.W.3d at 841–42, 2001 Tex. LEXIS 131, at *9–

*10; *see also Hay v. Shell Oil Company,* 986 S.W.2d 772, 778 (Tex.App.—Corpus Christi 1999, pet. denied) (reciting the elements for fraudulent concealment).

 Fraudulent concealment estops a culpable party from asserting limitations during a certain period of time—*i.e.,* the period of time in which the tort was concealed. The statute of limitations is tolled until the fraud is discovered or could have been discovered with reasonable diligence. *See, e.g., Velsicol,* 956 S.W.2d at 531. The question of when the fraud was discovered or when a reasonable person would have discovered it becomes a fact issue. Until that date is determined, we cannot determine whether the statute of limitations ran out on any of Harrison's causes of action. We cannot determine at this time, to a certainty, what that date is under the circumstances of this case. Accordingly, Harrison's causes of action against Bell and Gonzalez survive summary judgment on limitations grounds.[3]

 We now turn to the question of whether this evidence is sufficient to invoke the doctrine of fraudulent concealment against Greig Coates, Tommy Jacks, and Mithoff & Jacks, L.L.P. Here, the evidence fails. Rather, we find Harrison offered no evidence sufficient to raise a fact issue on the question of whether Coates or the law firm knew of an underlying tort or took any action to conceal the tort from Harrison. Thus, Harrison failed

---

**3.** The defendants have attempted to fix a date certain when, as a matter of law, the tort must have been discovered by exercising reasonable diligence. However, we do not believe that, under these facts, that date can be fixed as a matter of law. We would be inclined to hold that the absolute latest date an attorney might claim that he was unaware that he no longer represented a particular client, despite the attorney's diligence, would be the date on which the attorney would have been required to file suit on behalf of that client. It appears, though, that the Sanchez lawsuit sought damages for injuries to Sanchez's minor son rather than to Sanchez herself. In that case, Harrison would have had until the child's fourteenth birthday to file suit—or the year 2007. *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp.2001). Without using the date that Harrison would have been required to file the Sanchez suit, we do not see how a date certain can be fixed as a matter of law.

to survive summary judgment on these defendants' claims of limitations.

The tortious acts that form the basis of this suit took place between July and September of 1994. In July, a letter terminating Harrison's contingency contract with Sanchez was mailed from Harrison's law firm. In September, Coates signed up the Sanchez case as a referral from Bell. The earliest date that Harrison claims to have filed suit was in December of 1998. Clearly, this is four years past the date the alleged tortious acts occurred. Because none of the doctrines which would operate to toll the statute of limitations applies in Harrison's causes of action against Coates, Jacks, and the law firm, we hold summary judgment was properly granted in their favor on limitations grounds. We affirm the trial court's judgment insofar as it holds that plaintiff take nothing on his claims against Coates, Jacks and Mithoff & Jacks, LLP.

## REMAINING GROUNDS CONTAINED IN THE MOTIONS

Even though we have held that the trial court erred in granting summary judgment in favor of Bell and Gonzalez on limitations grounds, the trial court could have granted judgment on other grounds contained in Bell's and Gonzalez's motions. We now address whether summary judgment was properly granted on grounds other than limitations.

Both Bell and Gonzalez filed supplemental motions seeking judgment on Harrison's causes of action for fraud, misrepresentation and fraudulent concealment on grounds that the evidence conclusively negates an element of those causes of action. Specifically, Bell and Gonzalez contend that the evidence conclusively negates the element of reliance, which is common to all three causes of action. We disagree.

Fraud is established if the defendant makes a material representation, that is false, either known to be false when made or is asserted without knowledge of its truth, that is intended to be and is relied upon, and that causes injury. *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997). Silence can amount to a false representation when a person who has a duty to speak remains silent and the person to whom the duty is owed relies upon the silence to his detriment. *Id.* All three causes of action require that the plaintiff actually rely to his detriment on the false representations made by the defendant. *Id.*

Gonzalez and Bell contend that the false representations at issue were their representations to Harrison that the Sanchez case had little merit and was not a good investment for his law firm. Because Harrison did not take their advice and drop the case, they contend, he did not rely on any misrepresentations. Thus, all Harrison's causes of action requiring reliance must fail.

We disagree with their analysis. Rather, the misrepresentations at issue are the defendants' representations—both affirmative and through silence—that the case was still on Harrison's internal docket. Harrison does not contend in this suit that he was injured because he refused to take on Sanchez as a client because of false representations made by Bell and Gonzalez. Rather, he contends that Bell and Gonzalez secretly referred the case to another lawyer, terminated Harrison's attorney-client relationship with Sanchez, and deleted the file from Harrison's internal case-tracking system. Those actions caused Harrison to believe that the case was still on his docket. He relied on those misrepresentations to his detriment because if they had not made them, Harrison would have known that he had lost the

Sanchez file and had the opportunity to take appropriate remedial action. Bell's and Gonzalez's actions caused Harrison to lose a business opportunity.

We hold the trial court could not have correctly granted summary judgment in favor of Bell and Gonzalez on Harrison's reliance-based causes of action because Bell and Gonzalez failed to negate the element of reliance as a matter of law. *See* TEX. R. CIV. P. 166a(c). Accordingly, we reverse and remand the summary judgment as it pertains to Bell and Gonzalez, but affirm it as it pertains to Greig Coates, Tommy Jacks and Mithoff & Jacks, L.L.P.