In re A.C. PAINTING, INC., Debtor.

Texas Workers' Compensation
Insurance Fund,
Plaintiff,

v.

A.C. Painting, Inc., et al., Defendants.

Bankruptcy No. 00–35886–SAF–7.
Adversary No. 01–3145.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 5, 2002.

Robert M. O'Boyle, Haynes & Boone, Austin, TX, for Texas Workers' Compensation Insurance Fund.

Lawrence Fischman, Glast, Philips & Murray, Dallas, TX, for A.C. Painting and Aharon Chen.

Joyce W. Lindauer, Dallas, TX, for A.C. Painting, Inc.

Robert Frisch, Dallas, TX, for Linda Martin.

### MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Chief Judge.

The Texas Workers Compensation Insurance Fund seeks to recover unpaid premiums from A.C. Painting Company, Inc., Aharon Chen and Linda Martin. The Fund maintains that A.C. Painting underpaid its premiums, entitling the Fund to recover from A.C. Painting, its owner Chen, and its office manager Martin, based on contract, tort, and statutory claims. The defendants deny liability and assert a statute of limitations affirmative defense. The court conducted a trial on April 17, 18, and 19, 2002.

A.C. Painting is a debtor under Chapter 7 of the Bankruptcy Code. The allowance of a claim against a debtor constitutes a core matter over which this court has jurisdiction to enter a final judgment. 28 U.S.C. §§ 157(b)(2)(B) and 1334. The Fund's claims against Chen and Martin are related to the A.C. Painting bankruptcy case. But, the claims constitute non-core matters. The parties have consented to the entry of a final judgment by this court on the non-core matters. 28 U.S.C. §§ 157(C)(2) and 1334. This memorandum opinion contains the court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

The court has entered the pretrial order recommended by the parties. The Fund has submitted proposed findings of fact and conclusions of law, with a pretrial brief. However, the defendants have not submitted any proposed findings and conclusions nor have they submitted pretrial briefs.

A.C. Painting, through Chen and Martin, filed applications for workers' compensation insurance coverage to the Fund. A.C. Painting submitted an application dated October 25, 1994. On that application, the Fund issued policy no. SBP-0001039398 to A.C. Painting. The first policy covered the period of December 7, 1994, to December 7, 1995. A.C. Painting submitted an application dated November 29, 1995. On that application the Fund issued policy no. STA-0001053768. The second policy covered the period of January 17, 1996, to January 17, 1997. The parties agree that with interim and extended coverage the policies effectively covered the period of December 7, 1994, through February 20, 1997.[1]

The Fund is the insurer of last resort in Texas for workers' compensation insurance. Tex. Ins.Code Ann. art. 5.76–4 (1995). The Fund calculates premiums for

---

1. A.C. Painting also submitted applications dated January 3, 1996, and January 9, 1997. The Fund has not established that those applications resulted in policies subject to this adversary proceeding.

workers' compensation based on the amount of an employer's payroll per workers' compensation job classification codes. Thus, the Fund charged A.C. Painting premiums in part by multiplying a rate factor times the amount of payroll being covered. Therefore, the amount of payroll reported to the Fund by A.C. Painting during the application process directly affected the amount of the premium initially charged by the Fund.

### Claim Against A.C. Painting

The Fund filed a proof of claim for unpaid premiums totaling $2,557,298. In this adversary proceeding, A.C. Painting objects to the claim.

■ Sections 501 and 502 of the Bankruptcy Code and Bankruptcy Rule 3001 provide that "a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *In re Fidelity Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir.1988). The claimant will prevail unless a party who objects to the proof of claim produces evidence to rebut the claim. *Id.* Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. *Id.* Accordingly, the Fund's proof of claim is prima facie valid, unless the defendants produce evidence to rebut the presumption.

■ The policies constitute contracts between A.C. Painting and the Fund. The policies provide that the premium is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. The remuneration basis includes payroll and all other remuneration paid or payable during the policy period for the services of the insured's officers and employees and "all other persons engaged in work that would make [the Fund] liable" for workers' compensation coverage. Non-employees that engaged in covered work would not be included in the calculation, as long as A.C. Painting provided the Fund with "proof that the employers of these persons lawfully secured workers' compensation insurance." Policy, Part Five, C, as amended.

Based on the application, the Fund issues a premium. The premium "is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium [A.C. Painting] paid to [the Fund], [A.C. Painting] must pay [the Fund] the balance. If it is less, [the Fund] will refund the balance to [A.C. Painting]." Policy, Part Five, E.

A.C. Painting agreed to "keep records of information needed to compute the premium." A.C. Painting agreed to provide the Fund with copies of those records when requested. Policy, Part Five, F. The Fund obtained the contractual right to conduct an audit, with information developed by the audit to be used to determine the final premium. Policy, Part Five, G.

A.C. Painting submitted an application to the Fund dated October 25, 1994, claiming seven employees with an estimated painting payroll of $8,137.00. A.C. Painting submitted an application to the Fund dated November 29, 1995, claiming an estimated annual painting payroll of $250,000. The Fund issued the policies with the estimated premiums based on those applications.

Many more persons actually performed painting, dry-walling, and texturing work for A.C. Painting. A.C. Painting paid those persons using a bank account at Preston National Bank in Dallas, known as the "blue account." The persons paid

from the blue account performed work that made the Fund liable for workers' compensation. Indeed, A.C. Painting filed claims on behalf of persons paid from the blue account. Although only two injuries occurred during the covered period, Martin, the A.C. Painting office manager, testified she would have submitted a claim for any person paid from the blue account injured while engaged in work for A.C. Painting.

A.C. Painting contends that the persons on the blue account constitute independent contractors. Under the policy, remuneration for those persons, even though engaged in work for A.C. Painting covered by workers' compensation, would not be included in the final premium calculation if A.C. Painting provided the Fund with proof that those persons were covered by "lawfully secured workers' compensation insurance." A.C. Painting has provided no proof that any of the persons on the blue account were covered by lawfully secured workers' compensation insurance.

Chen, A.C. Painting's president, contends that he misplaced certain corporate records. Chen had been involved in a divorce proceeding, which required that he produce his corporations' financial records. After he regained possession of the files, Chen apparently destroyed certain records. This complaint had originally been filed in state court. The state court entered an order finding that A.C. Painting negligently misplaced computer records critical to the Fund's case. To avoid including the remuneration paid from the blue account in the final premium calculation, A.C. Painting had to produce proof of workers' compensation insurance coverage for those persons. Since A.C. Painting failed to provide proof, the remuneration for those persons is included in the final premium calculation.

During the trial, Chen testified that he had certificates evidencing coverage for those persons. The court directed him to produce the certificates during the trial. He did not produce any certificate for the subject coverage period. Instead, he produced certificates for other times, many of which could not survive evidentiary objections. The court determines that Chen's testimony that he had proof of workers' compensation insurance for those persons lacks credibility.

A.C. Painting acted consistently with these persons being covered by its workers' compensation policy. The Texas Workers' Compensation Commission issued forms, called TWCC–83. At various times, Chen presented these forms to persons paid from the blue account. The form provides for a person working on a job to indicate whether the person is either an independent contractor or an employee for workers' compensation purposes. Although several of the executed forms reflect that the person is an independent contractor for workers' compensation purposes, the signatory failed to provide the comptroller identification number necessary to complete the independent contractors affirmation. Therefore, they failed to establish their independent contractor status. The majority of the forms reflect either a signature that the person agrees to be considered an employee of A.C. Painting for workers' compensation purposes or leaves the designation blank and incomplete. Consistently with these forms, when A.C. Painting paid these persons, A.C. Painting retained a portion of the contract amount for work to be completed and another portion to cover the workers' compensation premium. Further, for the two instances of an injury to these persons on the job, A.C. Painting submitted workers' compensation claims to the Fund.

Nevertheless, Chen argues that the persons paid from the blue account remain independent contractors. He relies on the determination of the Internal Revenue Service that the persons were independent contractors for federal tax purposes and the determination of the Texas Employment Commission that some of the persons were independent contractors for Texas unemployment purposes. Irrespective of whether or not the persons may be considered independent contractors, A.C. Painting lacks the proof necessary to exclude the remuneration paid to them from the calculation of the final premium under its contract with the Fund. Accordingly, under the terms of the policies, the remuneration paid by the blue account must be included in the premium.

Furthermore, and alternatively, A.C. Painting has not established that the persons are independent contractors for workers' compensation purposes as defined by Texas law. Workers' compensation insurance covers all of an employer's subcontractors, except those who are either independent contractors, within the meaning of the Texas Workers' Compensation Act, or those who are covered by another workers' compensation policy. Tex. Lab.Code §§ 406.121 to 124 (1995). As found above, A.C. Painting has failed to provide proof of coverage by another workers' compensation policy.

Under the Texas Labor Code, an "independent contractor" means:

(2) ... a person who contracts to perform work or provide a service for the benefit of another and who ordinarily:

(A) acts as the employer of any employee of the contractor by paying wages, directing activities, and performing other similar functions characteristic of an employer-employee relationship;

(B) is free to determine the manner in which the work or service is performed, including the hours of labor of or method of payment to any employee;

(C) is required to furnish or to have employees, if any, furnish necessary tools, supplies, or materials to perform the work or service; and

(D) possesses the skills required for the specific work or service.

Tex. Lab.Code 406.121(2)(1995).

The majority of the persons paid from the blue account are individuals. A.C. Painting paid for their services, while deducting amounts to cover workers' compensation and withholding amounts to induce completion of the work. A.C. Painting even performed this function when persons employed others to perform the work. A.C. Painting supplied the paint. In certain instances, A.C. Painting even provided transportation to the job site. A.C. Painting also provided T-shirts and/or hats reflecting the A.C. Painting insignia. Shalom Chen, acting on behalf of A.C. Painting, supervised work performance. A.C. Painting provided employee forms for its safety program and to promote a drug free workplace. As found above, few of the persons stated on the TWCC–83 forms that they were independent contractors for workers' compensation purposes, and the few that did failed to provide a comptroller's identification number as required by the form. A.C. Painting treated the actual injuries that occurred as covered by the policy with the Fund. A.C. Painting processed the claims with the intent and expectation that the Fund would pay them.

On the other hand, these persons negotiated their fees based on either square footage or project. The persons may be considered sub-contractors. Several em-

ployed other workers. A.C. Painting did not determine which workers those persons employed. A.C. Painting paid those persons a negotiated contract amount, and they, in turn, paid their employees. A.C. Painting paid persons on the blue account every two weeks upon submission of invoices. The workers did not report their daily progress. The workers had the option of either accepting or rejecting other jobs with A.C. Painting. A.C. Painting did not train these workers. A.C. Painting retained these persons, by sub-contract, because of their existing skills. Either the owner or the general contractor provided the work schedule. The persons typically coordinated their jobs with that schedule. They performed their work in accordance with that schedule. Other than the paint, the persons provided their own tools and supplies. They also had to remedy any unsatisfactory work at their cost. A.C. Painting, however, had the authority to discharge any of these persons from a job site for unsatisfactory performance. A.C. Painting did not prohibit them from rendering services to others, and in fact some did work elsewhere. A.C. Painting reported the workers' remuneration on IRS Form 1099 MISC. A.C. Painting did not have liability for federal withholding taxes. Chen testified that A.C. Painting's C.P.A. never advised the corporation to treat these persons as employees. The corporation's insurance agent compiled the information for the policy applications.

Thus, the record contains evidence supporting a designation as independent contractor. But, on balance, the evidence does not establish these persons as independent contractors for workers' compensation purposes. Essentially, A.C. Painting obtained the work, paid the remuneration, withheld for workers' compensation coverage, enforced compliance and adherence to either the owner's or the general contractor's work schedule, provided the basic supplies, and treated the persons as employees for workers' compensation purposes. Under the Texas statute, therefore, the remuneration paid to these persons must be included in the premium calculation.

Interestingly, if A.C. Painting had opposed workers' compensation for any of these persons, in the event of an injury, based on a subcontractor relationship, the person may have had a cause of action against A.C. Painting while still being treated as an employee for coverage purposes. Tex. Labor Code § 406.124. As the person would be treated as an employee for workers' compensation purposes, the remuneration must necessarily have to be included in the premium calculation to protect the Fund.

The Fund did not include attorney's fees in its proof of claim. But, the parties agreed in the pretrial order that the Fund sought attorney's fees.

Texas law requires that an insured "make full disclosure to its insurance company of information concerning its true owner-ship, change of ownership, operations, or payroll and any of its records pertaining to workers' compensation insurance." Tex. Ins.Code art. 5.65B(a)(1995). The Fund conducted audits under the policies. A.C. Painting neither disclosed the remuneration to workers paid under the blue account nor disclosed the existence of the blue account. A.C. Painting did not produce evidence of other workers' compensation insurance for persons on the blue account. For failing to make a full disclosure, A.C. Painting must pay "the difference between the premium due and the premium actually charged, plus reasonable interest and reasonable attorney fees." Tex. Labor Code art. 5.65C(d)(1995).

Based on the procedure adopted during the trial on April 18, 2002, the Fund shall submit an application for an award of attorney's fees within twenty-one days from the date of service of this memorandum opinion and order. Counsel for the Fund shall attach time records to the application. The court will set a hearing to consider the parties' arguments concerning the application.

The court, therefore, allows the Fund's proof of claim against A.C. Painting for $2,557,298. The court will determine the attorney's fees and award interest. A.C. Painting has not rebutted the prima facie validity of the proof of claim. Alternatively, if a reviewing court concluded that the prima facie validity has been rebutted, the court finds that the Fund has established its claim by a preponderance of the evidence.

**Tort Claims against Chen and Martin**

The Fund claims that Chen and Martin: (1) committed common law and statutory fraud against the Fund; (2) made negligent misrepresentations to the Fund; and (3) conspired to defraud the Fund and conceal A.C. Paintings actual payroll for purposes of avoiding insurance premiums. Chen and Martin deny the claims, while affirmatively asserting that the claims are barred by the applicable Texas Statute of Limitation.

**Fraud**

■ Under Texas law, fraud requires that "(1) a material representation was made (2) that was false when made (3) by a speaker who either knew the statement was false or made it as a positive assertion recklessly and without knowledge of its truth (4) with the intent that the statement be acted upon, and (5) the party opposite acted in reliance on the false representation and (6) was injured as a result of doing so." *Stinnett v. Colorado Interstate*

*Gas. Co.,* 227 F.3d 247, 253 (5th Cir.2000)(applying Texas Law).

■ A.C. Painting submitted an application to the Fund in 1994 stating that it had seven employees, two of whom were painters, with an estimated annual painting payroll of $8,137.00. That statement was false. The application also stated that no A.C. Painting work was sublet without certificates of insurance. That statement was also false.

Martin signed the 1994 application. Chen testified that Martin was in charge of insurance in the office. She had the greatest knowledge of A.C. Painting's payroll process in the office. She knew the statement of the amount of payroll was false. She testified that she nevertheless signed the application, because it had been compiled by the insurance agent. But, Martin kept the records. As office manager, she was ultimately responsible for submitting the application. Martin knew the painting payroll substantially exceeded the amount reported. Knowing that, she made no effort to determine the truth of the statement that A.C. Painting did not sublet the work without certificates of insurance. Martin signed the application regarding that statement recklessly and without knowledge of its truth.

Based on the application, the Fund submitted an insurance policy proposal. A.C. Painting accepted the proposal. Chen signed the acceptance form. By signing the acceptance form, he stated that the payroll reported by classification on the application was true and a reasonable estimate of the amount. Chen also indicated that any material changes would be promptly reported. Chen knew that the application did not contain a reasonable estimate of the remuneration A.C. Painting paid. He also knew that A.C. Painting's operations differed materially from the application. Yet, Chen further recklessly

signed the acceptance form stating that any material changes would be promptly reported.

Both Chen and Martin intended that the Fund rely on the representations, as they both desired that the Fund would issue a workers' compensation policy for A.C. Painting. The Fund acted in reliance on their representations. The Fund issued the policy. The Fund based the premium on their representations.

In fact, as found above, A.C. Painting paid remuneration in a materially greater amount to persons covered by the workers' compensation policy. As a result, the Fund faced a risk exposure greater than that supported by the premium assessed, based on the application and acceptance.

A.C. Painting should have paid a premium that reflected the risks involved. *Brown & Root, Inc. v. Traders & General Ins. Co.*, 135 S.W.2d 534, 537 (Tex.Civ. App.-Galveston 1939, writ dism'd). The misrepresentations injured the Fund in an amount measured by the difference in the premium paid, based on the misrepresentations, and the premium that should have been paid. Based on the testimony of Grace Turner and the related exhibits, the Fund established by a preponderance of the evidence damages of $1,185,479.

A.C. Painting submitted an application to the Fund in 1995 stating that it had an estimated payroll of $250,000. That statement was false. The application also stated that no A.C. Painting work was sublet without a certificate of insurance. That statement was also false.

Chen signed the application. Prior to drafting the application, the insurance agent had questioned A.C. Painting about the disparity between the 1994 and 1995 applications regarding payroll. Chen knew that A.C. Painting paid workers performing tasks that would be subject to workers' compensation insurance. Chen knew that the blue account reflected the remuneration paid to persons identified by Chen as independent contractors. Chen also knew that the amount paid to them significantly exceeded $250,000. Chen knew that A.C. Painting had no proof that those persons were covered by other workers' compensation insurance.

As with the 1994 application and resulting acceptance, Chen intended that the Fund rely on the representations, as he desired that the Fund issue another workers' compensation policy for A.C. Painting. Indeed, Chen and Martin intended to and did submit claims to the Fund on behalf of persons off the blue account for workers' compensation coverage. The Fund acted in reliance on those representations. The Fund issued the policy. The Fund based the premium on the representations.

A.C. Painting paid remuneration in a materially greater amount to persons covered by the workers' compensation policy. As a result, the Fund faced a risk exposure greater than supported by the premium assessed based on the application and acceptance.

■ Again, A.C. Painting should have paid a premium that reflected the risks involved. The misrepresentations injured the Fund in an amount measured by the difference in the premium paid based on the misrepresentations and the premium that should have been paid. That amount places the Fund in the position that it would have occupied had the wrong not occurred. Based on the testimony of Grace Turner and the corresponding exhibits, the Fund has established by a preponderance of the evidence damages of $1,371,819.

The total damages for the fraud is $2,557,298.

The court finds both Chen and Martin liable for the fraud claim based on the 1994 application. Martin contends that as the office manager, she took directions from Chen, the corporation's president and shareholder. However, she cannot escape liability for her misrepresentations to the Fund. She signed the documents. She kept the payroll records. She knew of the blue account. She calculated the withholding from payments to the workers to cover the workers' compensation premiums. She knew that she signed claim forms for injured workers to recover under these policies. For fraud, it matters not that she was neither an officer nor director of the corporation. She could have declined to sign the documents. Martin did not, however, make any representations regarding the 1995 application. Thus, only Chen is liable for the fraud claim based on the 1995 application.

■ However, the Fund has not established by a preponderance of the evidence, that either Martin or Chen acted with malice. A.C. Painting had obtained an IRS ruling determining that the persons doing the work, under a subcontracting arrangement with A.C. Painting, would be considered independent contractors for tax purposes. A.C. Painting issued Form 1099–MISC to report their remuneration. A.C. Painting had submitted a similar presentation to the Texas Employment Compensation, which it ultimately established, in part. A.C. Painting retained the services of an insurance agent to assist with procuring the workers' compensation policy. A.C. Painting retained an accountant. The record thereupon does not support the award of punitive or exemplary damages.

Should a reviewing court disagree with this court's findings that damages should be based on the difference between the premium paid and the premium that should have been paid, for purposes of completeness, the court would alternatively find that damages should be the amount the Fund actually paid for claims submitted under the policies. By the time of the trial, the Fund knew its exposure to actual claims. Nearly six years have elapsed since the end of the subject policy periods. The Fund presented no evidence of the likelihood of any additional claims.

## Negligent Misrepresentation

■ The Fund asserts a claim for negligent misrepresentation against both Chen and Martin. The elements of the cause of action in Texas are: (1) the defendant made a representation in the course of his business; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant failed to exercise reasonable care or competence in communicating this information; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered some pecuniary loss. *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991).

■ With regard to the 1994 application and acceptance and the 1995 application, the court adopts the above findings under the fraud section of this memorandum opinion regarding the false representations made by Chen and Martin. Both Chen and Martin made the representations to the Fund to consider offering workers' compensation insurance to A.C. Painting.

If Chen and Martin lacked the intent to defraud, then both failed to exercise reasonable care and competence in communicating the information. In 1994, Chen and Martin both knew that A.C. Paintings' remuneration in the upcoming year would substantially exceed the painting payroll of $8,137 reported on the application. Both Chen and Martin knew the remuneration paid from the blue account. Assuming that Chen justifiably considered persons

on the blue account to be independent contractors, he knew that he lacked proof that they had other workers' compensation insurance. Chen either knew or would have known had he made the effort that none of those persons that signed the TWCC Form 83 satisfied the requirements necessary to qualify as independent contractors with workers' compensation insurance. He would have also known, had he made the effort, that those persons signed employee safety and work place rules forms. Martin likewise knew of the blue account. Martin also knew that funds were withheld from the remuneration paid those persons. She claims that she did not know of the reason for the withholding. But, the evidence established that she performed many of the calculations. And, assuming that she did not know why she was performing the calculation, a reasonable inquiry would have revealed that the purpose was to cover workers' compensation premium payments. A reasonable effort on her part would have alerted both Chen and the insurance agent to investigate whether A.C. Painting had the requisite documentation to support subletting the work with proof of other workers' compensation insurance.

In 1995, Chen knew that the remuneration paid from the blue account exceeded the $250,000 reported on the application. He knew or would have known, had he made the effort, that none of the persons on the blue account who signed TWCC–83 forms stating that they were independent contractors with workers' compensation insurance, satisfied the requirements. Chen knew or would have known, had he made the effort, that most persons either left the TWCC–83 Form blank or indicated they would be treated as A.C. Painting employees for workers' compensation insurance purposes. He likewise knew or would have known, had he made the effort, that A.C. Painting had no proof that any of those persons had other workers' compensation insurance. Chen knew or would have known by the exercise of reasonable care that A.C. Painting withheld funds from the persons on the blue account to cover workers' compensation premiums.

■ The Fund established that it justifiably relied on the representations to issue the policies with the initial premium amounts. The Fund suffered a pecuniary loss, measured either by the difference between the premium due and the premium paid, or, alternatively, by the claims paid for persons on the blue account.

Thus, if a reviewing court concluded that this court's findings of the fraud elements were clearly erroneous, the court would alternatively find that the Fund has established the elements of negligent misrepresentation against Chen and Martin for the 1994 application and against Chen for the 1995 application. The court would adopt the fraud alternative findings regarding damages.

### Civil Conspiracy

■ The Fund contends that Martin conspired with Chen to defraud the Fund by concealing A.C. Painting's true payroll for purposes of avoiding insurance premiums. The elements of a claim for civil conspiracy in Texas are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Jackson v. Radcliffe*, 795 F.Supp. 197, 209 (S.D.Tex.1992).

■ The Fund does not base its civil conspiracy claim against Martin on a failure to produce the records of the blue account. Martin believed that A.C. Painting maintained an employee account and an independent contractor account. Martin produced all the employee account rec-

ords when requested by the Fund. The Fund never requested independent contractor records and, thus, Martin never produced the blue account.

Martin testified that she implemented Chen's instructions.

With regard to the 1994 application, Martin knew that she had made a false representation. She knew that the effect would be to minimize the workers' compensation premium. Chen had an objective to minimize the premium. Martin facilitated that objective by signing the application with false information and then by not taking any kind of corrective action. The Fund has suffered damages as a result.

Thus, if Martin is not directly liable on a fraud cause of action, the court finds that the Fund has established the elements of civil conspiracy making Martin liable for conspiring with Chen to defraud the Fund with regard to the 1994 application.

Because Martin made no representation concerning the 1995 application, the Fund has not met its burden of proof regarding that application.

### Statute of Limitations

Chen and Martin contend that the Texas Statute of Limitation bars the fraud, negligent misrepresentation, and civil conspiracy claims. The Fund maintains that it should have the benefit of the discovery rule. In addition, the Fund asserts that A.C. Painting occupied a fiduciary position that alters the running of the limitation's period. Chen and Martin counter that the Fund did not preserve the discovery rule issue in the pretrial order. The Fund responds that it raised the issue by pleading that Chen and Martin had acted to conceal the remuneration on the blue account.

The limitation's period for these torts commences to run at the time the tortfeasor breaches the duty owed to the Fund. The limitation's period is four years for fraud, two years for negligent misrepresentation and two years for civil conspiracy. *Harrison v. Bell,* —— S.W.3d ——, ——, 2002 WL 221027, *2, 2002 Tex. App. LEXIS 1093, *5 (Tex.App.-Corpus Christi 2002, no pet. h.). However, under the discovery rule, the Fund may remain inactive until it has knowledge of some fact that should put it on inquiry as to the possible tort. Under the discovery rule, the limitations period commences when the Fund either discovers or in the exercise of reasonable diligence should discover the tort. *Childs v. Haussecker,* 974 S.W.2d 31, 40 (Tex.1998).

When a fiduciary relationship exists, diligence does not exact as prompt and searching an inquiry into the conduct of the fiduciary as if strangers were involved or parties on equal terms were dealing with each other at arm's length. *Edsall v. Edsall,* 238 S.W.2d 285, 288 (Tex. Civ.App.-Eastland 1951, writ ref'd n.r.e.). If a defendant fraudulently conceals information, then the defendant would be estopped from relying on the statute of limitations as an affirmative defense, until the injured party learns of the right of action or should have learned thereof through the exercise of reasonable diligence. *Borderlon v. Peck,* 661 S.W.2d 907, 908–09 (Tex. 1983).

Because of the Fund's unique status as the insurer of last resort, A.C. Painting had a statutory duty to be honest in its dealings with the Fund. A.C. Painting had to "make full disclosure to [the Fund] of information concerning ... payroll and any of its records pertaining to workers' compensation insurance." Tex. Ins.Code art. 5.65B. A.C. Painting had to be "honest in fact in any conduct or transaction with the Fund." Tex. Ins.Code art 5.76–3(d).

Misrepresentations made in its status of an employer while under a statutory duty to be honest in its dealings with the Fund precludes an insured from invoking equitable doctrines to shield itself from the results of its misconduct. *Texas Workers' Compensation Insurance Facility v. Personnel Servs., Inc.*, 895 S.W.2d 889, 894 (Tex.App.-Austin 1995, no writ).

■ The Fund contends that, as a result, A.C. Painting occupied a fiduciary relationship with the Fund. However, the Fund has not presented either a Texas statutory provision or a Texas case holding that the insured actually occupies a fiduciary relationship with the Fund. The statutory duty of honest dealing, and the resulting case law precluding invocation of equitable doctrines by the insured, do not make the insured a fiduciary. The Fund cannot, therefore, invoke the relaxed duty of inquiry applicable in fiduciary relationships.

Moreover, A.C. Painting does not invoke the statute of limitation as a defense to the claim against the bankruptcy estate. Instead, Chen and Martin invoke the statute of limitation. The statutory duty of honest disclosures applies to the insured.

■ Accordingly, Chen and Martin may invoke the limitations defense. However, the Fund may not rely on the relaxed discovery rule for a fiduciary relationship. The concealment doctrine does not relieve the Fund from the application of limitations after the Fund had facts that should have put it on inquiry so that it would have learned about the causes of action through the exercise of reasonable diligence, any concealment not withstanding.

■ The Fund filed the complaint against Chen and Martin on January 20, 2000.

The insurance policies provide that "the final premium will be determined after this policy ends by using the actual, not the estimated, premium basis." A.C. Painting had to maintain records of information needed to compute the premium. A.C. Painting agreed to provide the Fund with the records "when we [the Fund] ask for them." To develop the final premium, the Fund could conduct an audit up to three years after the policy period ends.

Thus, under the policy, the Fund would begin the process of determining the final premium when the policy period ends. The first policy period ended on December 7, 1995.

By or shortly after December 7, 1995, the Fund had received A.C. Paintings' November 29, 1995, application, estimating an annual painting payroll of $250,000. That estimate represented a staggering increase of approximately 3,000% from the estimate of $8,137 submitted to support the policy ending December 7, 1995. The Fund, therefore, had facts in the A.C. Painting file reflecting an apparent dramatic change in circumstances for A.C. Painting. The Fund had this information when it contractually began to determine the final premium.

As recognized by the policy and the governing statutes, persons covered by workers' compensation often subcontract their work, sometimes to independent contractors. As discussed above, the statutes define those entities for workers' compensation purposes. In addition, the policy provides the type of documentation that A.C. Painting had to maintain to exclude remuneration paid to those persons from workers' compensation premium calculations. The Fund had knowledge of the practice of subcontracting construction work, including painting and dry-walling.

With this knowledge of the industry and the reported fact of an apparent dramatic change in estimated painting payroll by

A.C. Painting, the Fund had facts on or about December 7, 1995, when it contractually began determining the final premium, that should have put it on inquiry, thereby triggering the discovery period. According to Martin, the Fund never requested any bank records or remuneration records concerning independent contractors. The Fund could have requested those records. The Fund could have requested records of all remuneration paid, regardless of whether to employees or subcontractors. The policy provides that A.C. Painting would keep the records; but, that A.C. Painting would produce them when requested. The Fund had the contractual duty to request those records. The Fund supplied the policy; A.C. Painting did not draft its provisions. The Fund knew of the industry practice of subcontracting work and using independent contractors. Therefore, the Fund, exercising reasonable diligence, should have expressly requested subcontractor and independent contractor records. From December 7, 1995, the Fund had to act with reasonable diligence. Exercising reasonable diligence, the Fund had notice that it should have made the request. Even though the policy gave the Fund three years to conduct an audit, the Fund had facts that should have triggered the reasonable diligence requirement on or about December 7, 1995.

The Fund argues that the TWCC 83 Forms had not been filed. The Fund also contends that A.C. Painting, the insured, failed to disclose the remuneration paid to its independent contractors and the lack of certificates of workers' compensation insurance for them. Tex. Ins.Code art. 5.65B. The Fund also argues that neither Chen nor Martin produced that information. While the court recognizes the statutory duty to disclose imposed on the insured, the test for the discovery rule for limitations is when did the Fund have information upon which the exercise of reasonable diligence should have discovered the tort. The court finds that date to be December 7, 1995. The Fund cannot ignore its own files, its own contractual provisions, and its own knowledge of the industry.

The court is concerned with the apparent conflicting policies at play. On the one hand, the Texas statutes impose on the insured a duty to disclose and an obligation of honest dealings with the Fund. For non-compliance, the insured must pay the Fund the premium differential, attorney's fees, and interest. Moreover, case law preempts the insured from invoking equitable defenses to paying those damages. Texas law thereby protects the Fund, as the insurer of last resort.

On the other hand, Texas law brings finality to the threat of litigation, thereby assuring a measure of predictability and certainty to the market. An injured person must pursue remedies upon reasonable diligence when it learns facts, even in the event of either a breach of duty to disclose or concealment by a tortfeasor. Knowledge constitutes a fact issue under the circumstances of a case. With knowledge, Texas law requires the exercise of reasonable diligence, an objective standard.

To reiterate the facts of this case: The Fund implemented the disclosure requirement through the policy, which is a contract between the Fund and A.C. Painting. The policy required that A.C. Painting retain records of remuneration paid and evidence of insurance coverage. The policy required that A.C. Painting produce the records when requested by the Fund.

On or about December 7, 1995, the Fund knew, under the contract, that it had to calculate a final premium. The Fund knew, from the A.C. Painting application dated November 29, 1995, that A.C. Painting reported a staggering percentage in-

crease in its estimated painting remuneration. The Fund knew that painting work is often subcontracted to independent contractors. The Fund knew that it had the contractual burden to request that A.C. Painting produce its records of remuneration paid to sub-contractors and that, upon that request, A.C. Painting had both a contractual and statutory duty to disclose that information. If the objective standard of the exercise of reasonable diligence is to have any meaning under these circumstances, then the limitations period must commence on December 7, 1995.

The Fund would have this court toll the limitations period until the insured affirmatively produces all records of remuneration paid, whether to employees or to those whom the insured believes are independent contractors. Since, under the policy, the insured need not produce records until requested and since the Fund has three years to conduct an audit, the Fund effectively suggests that limitations should not begin to run until three years after the end of the policy period, unless the insured makes an earlier disclosure. The court has no problem with that general proposition. Thus, had A.C. Painting not submitted a second application, and without affirmative disclosures or TWCC–83 Forms on file, the analysis may be different. However, under this court's reading of the Texas cases, the proposition must yield to the requirement that the Fund cannot remain inactive after it has knowledge of some fact that should put it to a reasonable inquiry.

If the Fund contends that the court has not fairly balanced the Texas policy to protect the Fund with the Texas policy of limitations, then it must pursue relief from an appellate court.

The Fund did not bring the litigation against Chen and Martin until January 20, 2000, more than four years after December 7, 1995. Consequently, the claims of fraud, negligent misrepresentation, and civil conspiracy against Chen and Martin for the first policy are time barred.

The second policy ended on either January 17, 1997, or February 20, 1997. The court would apply the same analytical process as for the first policy. But, for the second policy, the claims brought against Chen and Martin for fraud fall within the four year period and, consequently, are not time barred. However, the claims for negligent misrepresentation and civil conspiracy are time barred.

### Summary

The Fund has established that it holds an allowed claim against the bankruptcy estate of A.C. Painting for $2,557,298, plus attorney's fees and interest to the date of the bankruptcy petition. The Fund also established a claim of fraud, and in the alternative of negligent misrepresentation, and civil conspiracy against Chen and Martin regarding the first policy, with damages of $1,185,479, plus attorney's fees and interest. However, those claims are time barred and must be dismissed. The Fund established a claim of fraud, and in the alternative of negligent misrepresentation, against Chen regarding the second policy, with damages of $1,371,819, plus attorney's fees and interest. But, the negligent misrepresentation claim is time barred. The Fund did not establish claims of fraud, negligent misrepresentation or civil conspiracy against Martin regarding the second policy and those claims must be dismissed.

### Order

Based on the foregoing,

**IT IS ORDERED** that the Texas Workers Compensation Insurance Fund holds an allowed claim against the bankruptcy estate of A.C. Painting, Inc., of $2,557,298,

plus attorney's fees and interest to the date of the bankruptcy petition.

**IT IS FURTHER ORDERED** that the Texas Workers Compensation Insurance Fund shall have a judgment against Aharon Chen in the amount of $1,371,819, plus attorney's fees. The judgment shall bear pre– and post-judgment interest.

**IT IS FURTHER ORDERED** that the claims against Linda Martin shall be dismissed.

The court will determine the attorney's fees following the process outlined above. After the court decides the attorney's fees, counsel for the Fund shall prepared a proposed judgment consistent with this order.